IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HENDERSON CLARKE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) FIRST AMENDED |
| DET. CAMILO R. ANTONINI, Badge No. D111; | ) COMPLAINT |
| DET. SGT. SEAN J. FEGAN, Badge No. DS001; | ) |
| THE CITY OF MOUNT VERNON; P.O. PATRICK KING, | ) |
| Badge No. 2113; P.O. HOWARD, Badge No. | ) 21-CV-01877 (NSR) |
| 2163; unidentified Westchester | ) |
| County Department of Public Service | ) |
| Narcotics employees and officers; | ) |
| and unidentified | ) |
| Mount Vernon Police Department employees | ) |
| and officers, | ) |
| Defendants. | |

NOW COMES Plaintiff, HENDERSON CLARKE, and complaining of DEFENDANTS CAMILO ANTONINI, SEAN J. FEGAN, THE CITY OF MOUNT VERNON (hereinafter, "City"), PATRICK KING, P.O. HOWARD, THE COUNTY OF WESTCHESTER (hereinafter, "County"), UNKNOWN WESTCHESTER COUNTY DEPARTMENT OF PUBLIC SAFETY NARCOTICS EMPLOYEES AND OFFICERS; and UNKNOWN MOUNT VERNON POLICE DEPARTMENT EMPLOYEES AND OFFICERS, alleges as follows:

**Introduction**

1.    On July 23, 2019, Henderson Clarke was falsely arrested and charged with selling $100 worth of crack cocaine to an undercover police officer in Mount Vernon, New York.  Mr. Clarke did not commit this crime.  Indeed, he could not have

committed this crime because he was in North Carolina on July 26, 2017.  Despite his innocence, Mr. Clarke was falsely arrested and maliciously prosecuted for this crime.  The charges against Mr. Clarke were ultimately dismissed by the prosecution because he was innocent.

2.    Mr. Clarke's wrongful arrest and prosecution were the direct result of misconduct by each of the Defendants in this action.  This lawsuit seeks redress for that misconduct.

3.    What makes Mr. Clarke's wrongful conviction particularly disturbing is that it could have easily been prevented, had Defendants City of Mount Vernon or County of Westchester or the Defendant Officers acted upon years of credible and relevant allegations of misconduct against Defendants Antonini and Fegan and other narcotics officers including Defendant Officers within the Mount Vernon Police Department and the Westchester County Department of Public Safety.

4.    Defendants City of Mount Vernon and County of Westchester ignored the longstanding reports of misconduct by Defendants Antonini, Fegan, and others – including allegations that they fabricated evidence in drug arrests; knowingly coerced false identifications in drug arrests; protected preferred drug dealers while targeting drug users, rivals, and others on nothing more than the protected dealers' say-so; misused

confidential informants to fabricate claims against innocent people; and knowingly made false arrests of innocent people. Moreover, rather than discipline or fire those police officers accused of such wrongdoing, Defendants City of Mount Vernon, and County of Westchester gave these corrupt officers greater power and responsibility, including by promoting them and allowing them to work on prestigious multi-agency task forces, thereby granting them greater access to harm the citizens of Westchester County.  Mr. Clarke's wrongful conviction is the predictable result of years of inaction by those who were charged with protecting people like him from corrupt police officers.

**Jurisdiction and Venue**

5.    This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution and under the laws of the State of New York.

6.    This Court has jurisdiction of the action pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

7.    Venue is proper under 28 U.S.C. § 1391(b).  On information and belief, all of the parties reside in the Southern District of New York, and the events giving rise to the claims asserted herein all occurred within this district.

**Parties**

8.    Plaintiff, Henderson Clarke, is a 43 year old African-American man who is a lifelong resident of New Rochelle, New York.

9.    Defendant City of Mount Vernon is a New York municipal corporation, duly organized and existing under and by virtue of the laws of the State of New York, with its principal place of business in Mount Vernon, New York.

10.   Defendant City of Mount Vernon maintains the City of Mount Vernon Police Department (hereinafter, "MVPD"), a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the aforementioned municipal corporation, City of Mount Vernon.

11.   Defendant Detective Camilo Antonini is a duly sworn police officer of the MVPD at all times relevant to this action, acting under color of law and within the scope of his employment as a Mount Vernon police officer.

12.   Defendant Detective Sergeant Sean J. Fegan is a duly sworn police officer of the MVPD at all times relevant to this action, acting under color of law and within the scope of his employment as a Mount Vernon police officer.

13.   Defendant Police Officer Patrick King is a duly sworn police officer of the MVPD at all times relevant to this action,

acting under color of law and within the scope of his employment as a Mount Vernon police officer.

14.   Defendant Police Officer Howard is a duly sworn police officer of the MVPD at all times relevant to this action, acting under color of law and within the scope of his employment as a Mount Vernon police officer.

15.   Unknown Defendant Officers are current and/or former employees, officers, and/or supervisors of the Mount Vernon Police Department who at all relevant times were acting under color of law and within the scope of their employment.

16.   Defendant County of Westchester was and is a municipal corporation duly organized and existing under and by virtue of the laws of New York State.

17.   Defendant County of Westchester maintains the Westchester County Department of Public Safety (hereinafter, "WCPDS"), a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the aforementioned municipal corporation, County of Westchester.

18.   Unknown Defendant Officers are current and/or former employees, officers, and/or supervisors of the WCPDS who at all relevant times were acting under color of law and within the scope of their employment.

19.   Collectively, Defendants Antonini, Fegan, King, Howard, and the Unidentified MVPD and WCDPS Officers and Employees are referred to herein as the "Defendant Officers." Each of the Defendant Officers is sued in his, her, and/or their individual capacities.

20.   At all times hereinafter mentioned, the Defendant Officers, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages, and/or practices of the State of New York and/or the County of Westchester and/or the City of Mount Vernon.

21.   Each and all of the acts defendants alleged herein were done by said defendants while acting within the scope of their employment by Defendant City of Mount Vernon and/or Defendant County of Westchester.

**Facts**

**Defendants Antonini, Fegan, King, Howard and Other Defendants Fabricate a Crime and a False Felony Complaint Charging Henderson Clarke with a Crime He Did Not Commit**

22.   In July 2017, police officers from the MVPD and WCDPS narcotics units were working together to conduct undercover drug purchases as part of a prestigious joint task force.  The police officers involved in this joint effort included Defendants Antonini, Fegan, King, and Howard – all officers of the MVPD

Narcotics Unit – and unknown officers from the MVPD and WCDPS narcotics unit.

23.   Defendants Antonini, Fegan, King, and Howard and other Defendant Officers fabricated this crime out of whole cloth, conspiring together to falsely allege and swear that on the afternoon of July 26, 2017, Mr. Clarke sold crack cocaine to an undercover police officer when he did not.  Each of these Defendant Officers knew that Mr. Clarke had not sold drugs on July 26, 2017.

24.   This is so because on July 26, 2017, Henderson Clarke was in North Carolina visiting family.

25.   Despite his absence from Mount Vernon and the County of Westchester on July 26, 2017, Defendants Antonini, Fegan, King, and Howard and other Defendant Officers conspired to, and did, fabricate criminal charges against Mr. Clarke.

26.   Specifically, Defendants Antonini, Fegan, King, and Howard and other Defendant Officers conspired to falsely complete and compel others to complete official documentation supporting their fabrication that they observed Mr. Clarke sell crack cocaine to a WCDPS undercover (one of the unnamed Defendant Officers) in exchange for cash.  These false official documents, including sworn police reports, included but were not limited to detailed incident reports, evidence vouchers, and

photocopies of cash allegedly used in the controlled drug buy
with Mr. Clarke.

27.   These falsified official and sworn documents that
Defendants Antonini, Fegan, King, Howard, and other Defendant
Officers conspired to complete were created in order to
manufacture probable cause for Mr. Clarke's arrest, which did
not otherwise exist due to Mr. Clarke's innocence.

28.   These false documents reflect the involvement of each
of Defendants Antonini, Fegan, King, and Howard and other
Defendant Officers in the fraudulent criminal charges levied
against Mr. Clarke.

29.   In the alternative, Defendants Fegan, King, Howard,
and the other Defendant Officers were aware of Defendant
Antonini's misconduct in falsifying documents and fabricating
Mr. Clarke's involvement in the charged crime, but failed to
take steps to intervene to prevent this violation of Plaintiff's
rights, despite having the opportunity to do so.

30.   If Defendant Fegan, who was Defendant Antonini's
supervisor, did not directly participate in framing Mr. Clarke
for a crime he did not commit, Defendant Fegan was aware that
Defendant Antonini was engaged in a pattern of falsely charging
and arresting innocent people, fabricating evidence and
falsifying official documents to support these false arrests,
hiding exculpatory evidence, and other misconduct, and did

nothing to prevent or stop these violations in general and specifically in the case of Mr. Clarke.

31.  This conspiracy among Defendants Antonini, Fegan, King, Howard, and other Defendant Officers resulted in the creation of false and fabricated evidence, false and fabricated sworn documents, including a false felony complaint, sworn to by defendant Antonini and dated April 24, 2018, alleging that, on July 26, 2017, Mr. Clarke sold "five (5) clear plastic knotted twists [of] crack cocaine to an undercover officer in exchange for $100.00 in United States Currency."  This complaint charged Mr. Clarke with violating Penal Law 220.39(1), Criminal Sale of a Controlled Substance in the Third Degree, a B Felony.

**The Westchester County District Attorney and the City of Mount Vernon Publicize "Operation Crackdown", A Drug Sweep that Included the False Criminal Charges Against Mr. Clarke**

32.  On May 7, 2018, several weeks after the false criminal complaint against Mr. Clarke was sworn to by defendant Antonini, the Westchester County District Attorney's Office issued a press release announcing 22 arrests in a "multi-jurisdiction drug sweep", identifying the arrestees by name and identifying an additional six individuals – including Henderson Clarke – who had not yet been arrested but for whom warrants had been issued. This press release remains on the website of the Westchester

County District Attorney's Office.[1]



---



33.   In addition to the press release, former Mount Vernon Mayor Richard Thomas held a press conference announcing the arrests. This press conference was streamed live on Facebook and was also replayed on local news stations. A video recording of the press release remains online.[2]

34.   During the press conference, Mayor Thomas explained that the arrests were part of "Operation Crackdown" and were the result of a yearlong investigation by various law enforcement agencies, including the Mount Vernon Police Department and the Westchester County Police Department.

_____

[2] *See* https://www.facebook.com/watch/live/?v=601079950246470&ref=watch_permalink

35.    During his commentary, Mayor Thomas repeatedly connected the low level drug transactions with which Mr. Henderson and others were charged with acts of terrorism against the United States, referencing the then-recent terrorist attack on New York City's West Side Highway that killed 8 and injured 11.  Responding to a question from the press, Mayor Thomas explained that the drug transactions charged in Operation Crackdown were of the type that fund terrorist activities.

36.    MVPD Police Chief Shawn Harris then explained that the arrests were the product of a Heroin Task Force's efforts. Henderson Clarke was not charged with the sale of heroin or any opiate.  Upon information and belief, none of the individuals arrested in Operation Crackdown were charged with the sale of heroin or other opiates.

37.    Defendant Antonini and other Defendant Officers stood behind Mayor Thomas and Chief Harris while they spoke.



38.   These employees of Defendant City of Mount Vernon, publicized Mr. Clarke's name and likeness in connection with Operation Crackdown.  In addition to including Mr. Clarke's name in the Westchester District Attorney's press release, Mr. Clarke's photograph was included together with other photographs and presented on the Westchester District Attorney's Office website and during the live press conference.

39.   These false and inflammatory statements, together with the publication of Mr. Clarke's name and likeness in association with these false statements and false charges, caused grave harm to Mr. Clarke's reputation and caused Mr. Clarke to experience emotional distress.

**Mr. Clarke Is Falsely Arrested for a Crime He Did Not Commit**

40.   On Monday, July 23, 2019, more than a year after the press release announcing Operation Crackdown, Mr. Clarke was arrested in the city of White Plains.

41.   Defendant Antonini was one of several law enforcement officers from the Mount Vernon Police Department and other law enforcement agencies who arrested Mr. Clarke.

42.   Detective Antonini and unknown officers handcuffed Mr. Clarke, thereby intentionally confining Mr. Clarke, and transported him to Mount Vernon in an unmarked police car. At all times Mr. Clarke was aware of his confinement and did not consent to it.

13

43.   As is set forth elsewhere in this complaint, this
arrest lacked probable cause because Mr. Henderson had committed
no crime.   Defendants Antonini, Fegan, King, Howard, and other
Defendant Officers were aware at all times relevant to this
complaint that Mr. Clarke was innocent and that there was no
probable cause for his arrest.

44.   At the time he was arrested, Mr. Clarke protested to
Defendant Antonini and the other arresting officers, including
other Defendant Officers, that he had committed no crime.   The
officers informed him, in substance, that he was being charged
with selling drugs to an undercover police officer.   Mr. Clarke
again asserted his innocence.   Detective Antonini told Mr.
Clarke that they had evidence proving that Mr. Clarke had sold
drugs to an undercover police officer, including audio and video
recordings proving their case against him.

45.   Any alleged evidence supporting the charges against
Mr. Clarke was fabricated by Defendants Antonini, Fegan,
King,Howard, and other Defendant Officers.

46.   Despite the fact that the Defendant Officers,
including Defendant Antonini, lacked any reasonable basis or
probable cause to believe that Mr. Clarke had committed any
crime or offense, the Defendant Officers, including Defendant
Antonini, falsely arrested Mr. Clarke and transported him to the
Mount Vernon Police Department where he was processed based on

14

false and fabricated allegations and evidence by the defendant
officers.

47.   Thereafter, Defendant Officers, including Defendant
Antonini, forwarded fabricated evidence to the Westchester
County District Attorney's Office.  The Defendant Officers,
including Defendant Antonini also withheld exculpatory evidence
from the Westchester County District Attorney's Office.

48.   Defendants Fegan, King, Howard, and the other
Defendant Officers were aware of Defendant Antonini's misconduct
and that his misconduct resulted in the manufacturing of
probable cause where none existed, leading inevitably to the
false arrest of Mr. Clarke, but these and other unknown
Defendant Officers failed to take steps to intervene to prevent
this violation of Plaintiff's rights, despite having the
opportunity to do so.

49.   Defendant Fegan, Defendant Antonini's supervisor, was
aware that Defendant Antonini was engaged in a pattern of
falsely charging and arresting innocent people, fabricating
evidence and official documents to support these false arrests,
hiding exculpatory evidence, and other misconduct, and did
nothing to prevent or stop these violations in general and
specifically in this case.

### Mr. Clarke is Maliciously Prosecuted for a Crime He Did Not Commit

50.   Defendants Antonini, Fegan, King, Howard, and other
Defendant Officers forwarded the false and fabricated evidence
to the Westchester County District Attorney's Office in order
for it to be used against Mr. Clarke in the initiation and
continuation of a malicious prosecution against him.  These
Defendants also hid exculpatory evidence relating to Mr. Clarke
from prosecutors.

51.   As is set forth elsewhere in this complaint, there was
no probable cause for commencing the proceeding.  It was only
Defendants Antonini, Fegan, King, Howard, and other Defendant
Officers' decision to conspire to frame Mr. Clarke for a crime
he did not commit and to fabricate and falsify official reports
and evidence and to withhold and hide exculpatory evidence that
gave the appearance of probable cause to initiate and proceed
with a criminal prosecution.

52.   Defendants Fegan, King, Howard, and the other
Defendant Officers were aware of Defendant Antonini's misconduct
in forwarding fabricated evidence to and withholding exculpatory
evidence from the Westchester County District Attorney's Office.
These Defendants failed to take steps to intervene to prevent
this violation of Plaintiff's rights, despite having the
opportunity to do so.

53.   If Defendant Fegan, who was Defendant Antonini's
supervisor, did not directly participate in forwarding

16

fabricated evidence to and withholding exculpatory evidence from the Westchester County District Attorney's Office, Defendant Fegan was aware that Defendant Antonini was engaged in a pattern of falsely charging and arresting innocent people, fabricating evidence and official documents to support these false arrests, hiding exculpatory evidence, and other misconduct, and did nothing to prevent or stop these violations in general and specifically in the case of Mr. Clarke.

54. As a result of the illegal actions of Defendants Antonini, Fegan, King, Howard, and other Defendant Officers, Mr. Clarke was prosecuted for Criminal Sale of a Controlled Substance in the Third Degree. Mr. Clarke was presented to a judge on Wednesday, July 25, 2019, at which time he was informed that he would be transported for arraignment to the courthouse in White Plains, New York.

55. As a result of the illegal actions of Defendants Antonini, Fegan, King, Howard, and other Defendant Officers, Mr. Clarke was arraigned on Thursday, July 26, 2019 on the basis of the false felony complaint sworn to by Detective Antonini and dated April 24, 2018.

56. Through counsel, Mr. Clarke entered a plea of not guilty and informed the court that he was out of state on the date of the alleged offense, presenting the court with evidence

from his social media accounts showing that he was not in New York State on the date in question.

57.   As a result of the falsification of documents and evidence by Defendants Antonini, Fegan, King, Howard, and other Defendant Officers, the prosecution sought bail in the amount of $10,000. Bail was ultimately set in the amount of $5,000 on Plaintiff's case and Plaintiff was imprisoned at Valhalla Correctional Facility until he was freed on bail on Friday, July 27, 2019. In total, Mr. Clarke was wrongfully incarcerated for 5 days.

58.   Over the next five months, Mr. Clarke had approximately six court appearances.  At each appearance, Mr. Clarke, through counsel, asserted his innocence.

59.   On or about September 16, 2019, Defendants Antonini, Fegan, King, Howard, and other Defendant Officers took affirmative steps to assure the continued malicious prosecution against plaintiff by causing a Superseding Misdemeanor Information to be filed against plaintiff in the Mount Vernon City Court.  This Superseding Misdemeanor Information was also sworn to by Defendant Antonini and based on the same conspiracy to frame Mr. Clarke engaged in by Defendants Antonini, Fegan, King, Howard, and other Defendant Officers, which included the falsification of official documents and fabrication of evidence.

60.   The Superseding Misdemeanor Information charged Mr. Clarke with Criminal Possession of a Controlled Substance in the Seventh Degree, a misdemeanor.  This misdemeanor information alleged that, on July 26, 2017, in the City of Mount Vernon, at approximately 1:27 p.m., Mr. Clarke possessed crack cocaine. Because Mr. Clarke was in North Carolina on July 26, 2017, and for all of the other reasons alleged herein that the felony complaint was false and fabricated, so too was the misdemeanor information false and fabricated.  Likewise, for all of the reasons set forth herein why there was no probable cause to prosecute Mr. Clarke for a felony, there was no probable cause to continue the prosecution or to prosecute him for a misdemeanor.

61.   Defendants Fegan, King, Howard, and the other Defendant Officers were aware of Defendant Antonini's misconduct in forwarding fabricated evidence to and withholding exculpatory evidence from the Westchester County District Attorney's Office, but failed to take steps to intervene to prevent this violation of Plaintiff's rights, despite having the opportunity to do so.

62.   If Defendant Fegan, who was Defendant Antonini's supervisor, did not directly participate in forwarding fabricated evidence to and withholding exculpatory evidence from the Westchester County District Attorney's Office, Defendant Fegan was aware that Defendant Antonini was engaged in a pattern

of falsely charging and arresting innocent people, fabricating evidence and official documents to support these false arrests, hiding exculpatory evidence, and other misconduct, and did nothing to prevent or stop these violations in general and specifically in the case of Mr. Clarke. On December 11, 2019, Mr. Clarke, through counsel, formally provided the prosecution with disclosure of his alibi witnesses.

63.   On January 9, 2020, the prosecution finally dismissed Mr. Clarke's criminal case.  No discovery, including the alleged audio and video recordings proving Mr. Clarke's alleged involvement in the crime, or any of the evidence required to be disclosed by statute or the New York State or United States Constitution, or under the Brady Rule Order previously imposed in the case, were ever produced to Mr. Clarke.

64.   Plaintiff was compelled to appear in court to answer to the aforementioned fabricated and malicious charges on at least six occasions before the charges were finally dismissed. The charges against Mr. Clarke were ultimately dismissed because he was innocent.

65.   All of the above occurred as a direct result of the unconstitutional policies, customs, or practices of the Defendants City of Mount Vernon and County of Westchester including, without limitation, the inadequate screening, hiring, retaining, training, and supervising of its employees, and

pursuant to customs or practices of falsely arresting individuals, the falsification of evidence, and the failure to investigate or address allegations of police misconduct and abuse by the Defendants City of Mount Vernon and County of Westchester.

### The Resolution of Other "Operation Crackdown" Cases

66.   Other arrests made in connection with "Operation Crackdown" were resolved by dismissal or by very favorable plea deals.

### Mr. Clarke's False Arrest and Malicious Prosecution is the Logical Result of Years of Unaddressed Misconduct by MVPD and WCDPS Officers and Employees, Including Defendants Antonini, Fegan, and Others

67.   Mr. Clarke's false arrest and malicious prosecution is not an isolated incident.  Defendants City of Mount Vernon and County of Westchester have long been on notice about the illegal misconduct of MVPD officers and employees, including Defendants Antonini, Fegan, King, and Howard.  This illegal misconduct includes, as here, fabricating crimes, falsifying reports, illegally detaining individuals who have committed no crime, hiding exculpatory evidence from prosecutors, and standing by while innocent people are prosecuted for crimes they did not commit.

68.   According to the Mount Vernon Police Department Manual, Defendants Antonini and Fegan, by virtue of their ranks,

were obligated to supervise other members of the Mount Vernon
Police Department, including Defendant Officers named herein,
and in so supervising others, ensure that their duties were
carried out legally, to "develop and improve" individuals under
their command, inspect the work of others, and report
misconduct.

69.  Despite these responsibilities, neither Defendant
Antonini nor Defendant Fegan took any action to address the
illegal misconduct described herein, which was rampant during
the relevant period within the Mount Vernon Police Department,
including in joint task force operations involving MVPD and
WCDPS.

70.  Defendants City of Mount Vernon and County of
Westchester were aware from numerous complaints from civilians
and police officers alike, civil rights lawsuits, notices of
claims, and other information, which were provided to Defendants
City of Mount Vernon and County of Westchester prior to Mr.
Clarke's arrest, that MVPD officers, including Defendants
Antonini and Fegan, as well as others within the MVPD Narcotics
Unit (of which Defendants King, Howard and other Defendant
Officers were members) and the WCDPS Narcotics Unit routinely
engaged in the type of egregious misconduct at issue here.

71.  Specifically, these sources of information put
Defendants City of Mount Vernon and County Of Westchester on

notice that the members of the MVPD Narcotics Unit and the WCDPS Narcotics Unit were known to have fabricated evidence, planted narcotics, coerced false identifications, acted in a racist and discriminatory manner, used excessive force, and generally engaged in misconduct in other cases and arrests, or stood idly by while their colleagues within the MVPD Narcotics Unit and the WCDPS Narcotics Unit engaged in such misconduct.

72.   It has therefore long been clear to Defendants City of Mount Vernon and County of Westchester that Defendants Antonini and Fegan, as well as others within the MVPD and WCDPS Narcotics Unit, potentially including the other Defendant Officers, were inadequately trained and supervised and were engaging in an ongoing custom or practice of fabricating narcotics charges against innocent people and then falsely arresting individuals on these fabricated narcotics charges and conspiring to file and continue malicious prosecutions against innocent people, including Mr. Clarke.

73.   Defendants City of Mount Vernon and County of Westchester were further aware that improper hiring, training, supervision and other practices have often resulted in the deprivation of civil rights for citizens, as revealed by civilian complaints[3] and civil rights lawsuits, and that this

---

[3] *See* George Joseph, "Corruption and Brutality Allegations Against Mount Vernon Detective Are Echoed by Civilian Complaints", GOTHAMIST, March 11, 2020,

pattern would inevitably lead to the false arrest and malicious prosecution of a citizen like Henderson Clarke.

74.   Pending and settled civil rights lawsuits have also put Defendants City of Mount Vernon and County of Westchester on notice that the above described improper training and practices have often resulted in the deprivation of civil rights for citizens, and that this pattern would inevitably lead to the false arrest and malicious prosecution of a citizen like Henderson Clarke.   Examples of these cases include, but are not limited to:

  a. *Scott v. City of Mount Vernon et al.,* 14 CV 4441 (SDNY):  Members of a single family alleged that defendant Antonini and other members of the Mount Vernon Police Department unlawfully entered their home, detained them without reason, and unlawfully strip searched one member of the family.  This case was settled for $175,000.[4]
  b. *Nunez v. City of Mount Vernon et al.,* 14 CV 08530 (SDNY): Two brothers allege they were wrongly arrested and beaten by Mount Vernon Police Department Officers. This case was settled for $250,000.[5]

  c. *Fonseca v. City of Mount Vernon et al.,* 5459/2013 (N.Y. Sup.):  An individual alleged false arrest,

---

https://gothamist.com/news/corruption-and-brutality-allegations-against-mount-vernon-detective-are-echoed-civilian-complaints.

  [4] Ernie Garcia, "Mount Vernon to pay $175,000 in alleged home invasion", LoHud.com, Aug. 16, 2017, https://www.lohud.com/story/news/local/westchester/mount-vernon/2017/08/16/strip-search/570586001/

  [5] Ernie Garcia, "Mount Vernon to pay $250k for police excessive force", LoHud.com, Apr. 4, 2017, https://www.lohud.com/story/news/crime/2017/04/04/police-brutality-mount-vernon/100026828/

malicious prosecution and excessive force.  This case was settled for $75,000.[6]

d. *Giles v. City of Mount Vernon et al.,* 20 CV 5119(2020):  Plaintiff alleges that defendant Antonini, together with others, framed him for a narcotics offense, criminal charges that were ultimately dismissed.

e. *Govan v. City of Mount Vernon, et al.,* 19 CV 8830 (S.D.N.Y.):  Plaintiff alleges that defendant Antonini, together with others, framed him for a narcotics offense, falsely arrested and maliciously prosecuted him, and used excessive force against him.

75.  In addition, Defendants City of Mount Vernon and County of Westchester were aware of misconduct by Defendant Officers Antonini, Fegan and King, and others including Defendant Officers, by complaints made by MVPD Officer Murashea Bovell as well as from audio recordings made by Officer Bovell in which other MVPD Officers – unaware that they were being recorded –  recounted specific incidents of misconduct involving Defendants Antonini, Fegan, King, and others, as well as prior complaints lodged with Defendant City of Mount Vernon about these acts of misconduct.

76.  These allegations of misconduct include allegations that drugs were planted on innocent people and that undercover officers – potentially including WCDPS officers such as the

---

[6] Ernie Garcia, "Mount Vernon to pay $75,000 in police brutality case", LoHud.com, Jul. 21, 2017, https://www.lohud.com/story/news/local/westchester/mount-vernon/2017/07/21/police-brutality/495154001/

unknown Defendant Officers – were coerced to falsely identify
known innocent suspects in narcotics "buy and bust" operations
like the one used against Mr. Clarke and others in connection
with Operation Crackdown.[7]  These recordings were provided to
Defendants City of Mount Vernon and County of Westchester.

77.  Despite such notice, Defendants City of Mount Vernon
and County of Westchester have failed to take corrective action.
This failure caused the Defendant Officers in the present case
to violate Mr. Clarke's civil rights.

78.  Moreover, Defendants City of Mount Vernon and County
of Westchester were aware from all of these sources of notice
prior to Defendant Antonini swearing the indictment against Mr.
Clarke, based on information including but not limited to that
described above, that the Defendant Officers lacked the
objectivity, temperament, maturity, discretion, and disposition
to be employed as police officers.  Despite such notice,
Defendants City of Mount Vernon and County of Westchester have
retained these officers, given these officers prestigious
positions including on joint task forces, promoted these
officers, and failed to adequately train and supervise them.

---

[7] *See* George Joseph, "The Mount Vernon Police Tapes:  In Secretly
Recorded Phone Calls, Officers Say Innocent People Were Framed", GOTHAMIST,
June 3, 2020, https://gothamist.com/news/mount-vernon-police-tapes-innocent-
people-were-framed and George Joseph, "The Mount Vernon Police Tapes:  In
Secretly Recorded Calls, Officer Says Some Drug Dealers Operate with 'Free
Reign'", GOTHAMIST, June 18, 2020,  https://gothamist.com/news/mount-vernon-
police-tapes-officer-says-some-drug-dealers-operate-with-free-reign.

79.  As a direct result of the aforementioned failures, Mr. Clarke's rights were violated.

80.  All of the aforementioned acts of Defendants, their agents, servants, and employees were carried out under the color of state law.

81.  The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, with the entire actual and/or apparent authority attendant thereto.

82.  Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice procedure, or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

83.  As a result of the foregoing, Plaintiff Henderson Clarke sustained, *inter alia* emotional distress, embarrassment, humiliation, and deprivation of his constitutional rights.

### Mount Vernon's Policies and Widespread Practices

84.  The constitutional violations that caused Plaintiff's false arrest and malicious prosecution were not isolated events. To the contrary, they were the result of the City of Mount Vernon and Westchester County Department of Public Safety's policies and widespread practices of falsely arresting innocent

people, planting and/or fabricating evidence, and falsifying
police reports and other official documents.

85.   The constitutional violations that caused Plaintiff's
false arrest and malicious prosecution were the result of the
City of Mount Vernon and County of Westchester's policies and
widespread practices of failing to adequately train and
supervise MVPD and WCDPS employees on their obligations not to
falsify and plant or fabricate evidence, falsify official
documents, and falsely arrest, or maliciously prosecute
individuals.

86.   These constitutional violations were also the result
of the City of Mount Vernon and County of Westchester's policies
and widespread practices of failing to discipline officers who
illegally strip and body cavity search detainees and arrestees,
falsify and plant evidence, fabricate and falsify official
documents, and falsely arrest, or maliciously prosecute
individuals.

87.   The constitutional violations that caused Plaintiff's
illegal strip and body cavity searches and the claims set forth
in this Complaint were also the result of the City's and
County's policies and widespread practices of failing to
intervene to prevent individual employees from violating
citizens' constitutional rights.

88.   In accordance with these policies and widespread practices, City and County employees refused to report misconduct committed by their colleagues, including the misconduct at issue in this case.

89.   The City and County's failure to train, supervise, and discipline their officers and employees effectively condones, ratifies, and sanctions the kind of misconduct that the Defendant Officers committed against Plaintiff in this case. Constitutional violations such as those that occurred in this case are encouraged and facilitated as a result of the City's and County's practices and policies, as alleged above.

90.   The City and County their employees failed to act to remedy the abuses described in the preceding paragraphs, despite actual knowledge of the pattern of misconduct.  They thereby perpetuated the unlawful practices and ensured that no action would be taken to remedy Mr. Clarke's ongoing injuries.

91.   The policies and practices described in the foregoing paragraphs were consciously approved by City policymakers who were deliberately indifferent to the violations of constitutional rights described herein.

**Plaintiff's Damages**

92.   As a result of the events described herein, including his false arrest and malicious prosecution, Mr. Clarke suffered

emotional distress, anxiety, humiliation, shame and terror, as well as reputational harm.

93.  Mr. Clarke is now fearful of police; he afraid that he can be arrested and prosecuted for no reason at all.

94.  The incidents described above also caused Mr. Clarke to become estranged from his family, including members of his family who wrongly believed that he had committed a crime when he had not.  This was particularly damaging because, although Mr. Clarke had committed narcotics-related offenses when he was a younger man, he had truthfully told family members, including his children, that he was no longer engaged in any criminal conduct. This arrest caused family members to doubt the veracity of this.

95.  As a result of the foregoing, Plaintiff, Henderson Clarke, has suffered emotional, psychological, and reputational damages, all caused by the Defendant Officers' misconduct.

### Count I – 42 U.S.C. § 1983
### Fourth Amendment/Illegal Search and Seizure

96.  Each Paragraph of this Complaint is incorporated as if restated fully herein.

97.  As described in the preceding paragraphs, the conduct of the Defendant Officers, while acting individually, jointly, and in conspiracy with one or more persons, known and unknown, as well as under color of law and within the scope of their

employment, violated Plaintiff's Fourth Amendment rights in that they seized Plaintiff without justification and without probable cause.

98.   As described in the preceding paragraphs, the Defendants violated Plaintiff's Fourth Amendment rights in that they seized Plaintiff without justification and without probable cause.

99.   The misconduct described in this Count was objectively unreasonable and undertaken with malice, willfulness, and reckless indifference to the rights of others.

100. As a result of Defendants' misconduct described in this Count, Plaintiff suffered great mental anguish, humiliation, degradation, emotional pain and suffering, loss of liberty, and other grievous and continuing injuries and damages as set forth above.

101. The misconduct described in this Count was undertaken pursuant to the policies and practices of the City of Mount Vernon and the County of Westchester in the manner more fully described below in Count VII.

### Count II – 42 U.S.C. § 1983
### False Arrest/Unlawful Imprisonment

102. Each Paragraph of this Complaint is incorporated as if restated fully herein.

103. As described in the preceding paragraphs, the Defendant Officers, while acting individually, jointly, and in conspiracy with one or more persons, known and unknown, as well as under color of law and within the scope of their employment, falsely arrested and unlawfully detained Henderson Clarke.

104. The misconduct described in this Count was objectively unreasonable and undertaken with malice, willfulness, and reckless indifference to the rights of others.

105. As a result of Defendants' misconduct described in this Count, Plaintiff suffered great mental anguish, humiliation, degradation, emotional pain and suffering, loss of liberty, and other grievous and continuing injuries and damages as set forth above.

106. The misconduct described in this Count was undertaken pursuant to the policies and practices of the City of Mount Vernon in the manner more fully described below in Count VII.

### Count III – 42 U.S.C. § 1983
### Malicious Prosecution

107. Each Paragraph of this Complaint is incorporated as if restated fully herein.

108. As described in the preceding paragraphs, the Defendant Officers, while acting individually, jointly, and in conspiracy with one or more persons, known and unknown, as well as under color of law and within the scope of their employment,

caused Plaintiff to be unreasonably seized and improperly subjected to judicial proceedings for narcotics crimes for which there was no probable cause.  These judicial proceedings were ultimately terminated in Plaintiff's favor in a manner indicative of his innocence.

109. The misconduct described in this Count was objectively unreasonable and undertaken with malice, willfulness, and reckless indifference to the rights of others.

110. As a result of Defendants' misconduct described in this Count, Plaintiff suffered great mental anguish, humiliation, degradation, emotional pain and suffering, loss of liberty, and other grievous and continuing injuries and damages as set forth above.

111. The misconduct described in this Count was undertaken pursuant to the policies and practices of the City of Mount Vernon in the manner more fully described below in Count VII.

### Count IV – 42 U.S.C. § 1983
### Violation of a Right to Fair Trial

112. Each Paragraph of this Complaint is incorporated as if fully restated herein.

113. Defendant Officers created false evidence against Plaintiff and withheld exculpatory evidence against Plaintiff.

114. Defendant Officers forwarded this false evidence to, and withheld exculpatory evidence from, the Westchester County

District Attorney's Office to be used against Plaintiff in legal proceedings, and it was used to perpetuate the proceedings against him.

115. As a result of Defendants' creation and use of false evidence, and withholding of exculpatory evidence, Plaintiff was deprived of his liberty and suffered a violation of his constitutional rights to a fair trial, as guaranteed by the United States Constitution.

116. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

117. The misconduct described in this Count was undertaken by Defendants within the scope of their employment and under color of law such that their employers, City of Mount Vernon, are liable for their actions.

## Count V – 42 U.S.C. § 1983
## Failure to Intervene

118. Each Paragraph of this Complaint is incorporated as if restated fully herein.

119. In the manner described above, during the constitutional violations described herein, one or more of the Defendants stood by without intervening to prevent the violation of Plaintiff's constitutional rights, even though they had the duty and the opportunity to do so.

120. Defendant Officers failed to intervene to prevent the violations of Plaintiff's constitutional rights, including his false arrest and malicious prosecution, as set forth in this Complaint.

121. The misconduct described in this Count was objectively unreasonable, was undertaken intentionally, and in total disregard of the truth and Plaintiff's innocence.

122. As a result of Defendants' misconduct described in this Count, Plaintiff suffered great mental anguish, humiliation, degradation, emotional pain and suffering, loss of liberty, and other grievous and continuing injuries and damages as set forth above.

123. The misconduct described in this Count was undertaken pursuant to the policies and practices of the City of Mount Vernon and County of Westchester in the manner more fully described below in Count VII.

### Count VI — 42 U.S.C. § 1983
### Section 1983 Monell Claim

124. Each Paragraph of this Complaint is incorporated as if fully restated herein.

125. Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the

respective municipality/authority, which is forbidden by the Constitution of the United States.

126. As described in detail above, the City of Mount Vernon and County of Westchester is liable for the violation of Plaintiff's constitutional rights because Plaintiff's injuries were caused by the policies, practices, and customs of the City of Mount Vernon and County of Westchester as well as by the actions of policy-making officials for the City.

127. At all times relevant to the events described in this Complaint and for a period of time prior thereto, the City and County had notice of a widespread practice by their officers and agents of manufacturing false evidence, suppressing exculpatory evidence, and instigating false criminal charges, including the falsification of statements and reports, fabricating false evidence to implicate defendants in criminal conduct, and pursuing wrongful convictions.

128. These widespread practices, individually and together, were allowed to flourish because the leaders, supervisors, and policymakers of the City and the County directly encouraged and were thereby the moving force behind the very type of misconduct at issue by failing to adequately screen, hire, retain, train, supervise, and control their officers, agents, and employees, and by failing to adequately punish and discipline prior

instances of similar misconduct, thus directly encouraging future abuses such as those affecting Plaintiff.

129. The above widespread practices and customs, so well settled as to constitute *de facto* policies of the City and the County, were able to exist and thrive, individually and together, because policymakers with authority over the same exhibited deliberate indifference to the problem, thereby effectively ratifying it.

130. At all times relevant to the events described in this Complaint and for a period of time prior and subsequent thereto, the City and County failed to promulgate proper or adequate rules, regulations, policies, and procedures for the searching of detainees and arrestees; the collection, documentation, preservation, testing, and disclosure of evidence; the writing of police reports and taking of investigative notes; obtaining statements and testimony from witnesses; and maintenance of investigative files and disclosure of those files in criminal proceedings.  In addition or alternatively, the City and County failed to promulgate proper and adequate rules, regulations, policies, and procedures for the training and supervision of officers and agents of the City and County, with respect to these subjects.

131. These failures to promulgate proper or adequate rules, regulations, policies, and procedures were committed by officers and agents of the City and County.

132. In addition, the misconduct described in this Count was undertaken pursuant to the policies and practices of the City and County in that the constitutional violations committed against Plaintiff were committed with the knowledge or approval of persons with final policymaking authority for the City and County or were actually committed by persons with such final policymaking authority.

133. As a result of the policies and practices of the City and County, numerous individuals have been illegally and intrusively searched and wrongly prosecuted and imprisoned for, as well as convicted of, crimes that they did not commit.

134. Plaintiff's injuries were directly and proximately caused by officers, agents, and employees of the City and County, including but not limited to the individually named Defendants, who acted pursuant to one or more of the policies, practices, and customs set forth above in engaging in the misconduct described in this Count.

**Supplemental State Law Claims *Against Defendant City of Mount Vernon and MVPD Individual Defendants***

135. Each Paragraph of this Complaint is incorporated as if fully stated herein.

136. Within the time set forth by law, Plaintiff duly served upon, presented to and filed with the City of Mount Vernon, a Notice of Claim setting forth all facts and information required under the General Municipal Law 50-e.

137. More than 30 days have elapsed since Plaintiff's 50-h hearing and the City of Mount Vernon has made no offer of an adjustment or payment thereof.

138. Plaintiff has complied with all conditions precedent to maintaining the instant action.

139. This action falls within one or more of the exceptions as outlined in C.P.L.R. 1602.

### Count VII – New York State Law
### Malicious Prosecution

140. Each Paragraph of this Complaint is incorporated as if fully restated herein.

141. The Defendant MVPD Officers initiated, commenced, and continued a malicious prosecution against Plaintiff.

142. Defendant City of Mount Vernon, as employer of the individually named Defendant Officers, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

143. MVPD Defendants caused Plaintiff to be prosecuted without probable cause until the charges were resolved in Plaintiff's favor in criminal court on or about January 21, 2020.

144. MVPD Defendants caused Plaintiff to be prosecuted without probable cause until the charges were resolved in Plaintiff's favor in criminal court on or about January 21, 2020.

### Count VIII – New York State Law
### Negligent Screening, Hiring, and Retention

145. Each Paragraph of this Complaint is incorporated as if fully restated herein.

146. Upon information and belief, Defendant City of Mount Vernon failed to use reasonable care in the screening, hiring and retention of the aforesaid defendants who illegally searched, falsely arrested, manufactured evidence against, and maliciously prosecuted Plaintiff.

147. Defendant City of Mount Vernon knew, or should have known in the exercise of reasonable care, the propensities of the Defendant Officers to engage in the wrongful conduct heretofore alleged in this Complaint.

### Count IX – New York State Law
### Negligent Training and Supervision

148. Each Paragraph of this Complaint is incorporated as if fully restated herein.

149. Defendant City of Mount Vernon failed to use reasonable care in the training and supervision of the aforesaid Defendants, who illegally searched, falsely arrested,

manufactured evidence against, and maliciously prosecuted the plaintiff.

**Count X – New York State Law**
**Respondeat Superior Liability**

150. Each Paragraph of this Complaint is incorporated as if fully restated herein.

151. The MVPD Defendants were at all times material to this complaint as employees of the Mount Vernon Police Department, and acted within the scope of their employment in committing the misconduct described above.

152. The MVPD Defendants' tortious conduct was undertaken while carrying out routine investigative functions.  The conduct was reasonably expected by, and in fact foreseen by, Defendants' employer.

153. Defendant City of Mount Vernon is liable as principal for all intentional torts committed by its agents.

**WHEREFORE**, Plaintiff, HENDERSON CLARKE, respectfully requests that this Court enter judgment in his favor and against Defendants, CITY OF MOUNT VERNON, COUNTY OF WESTCHESTER, CAMILO ANTONINI, SEAN J. FEGAN, PATRICK KING, P.O. HOWARD; and unknown Mount Vernon Police Department and Westchester County Department of Public Safety employees and officers, awarding compensatory damages and attorneys' fees, as well as punitive damages against

the Defendant Officers in their individual capacities, as well as any other relief this Court deems just and appropriate.

## JURY DEMAND

Plaintiff Henderson Clarke hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

RESPECTFULLY SUBMITTED,


/s/ Karen A. Newirth
LOEVY & LOEVY
Attorneys for Plaintiff
311 N. Aberdeen Street
Third Floor
Chicago, IL 60607
(718) 490-0028