IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HENDERSON CLARKE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) JURY TRIAL |
| DET. CAMILO R. ANTONINI, Badge No. D111; | ) DEMANDED |
| DET. SGT. SEAN J. FEGAN, Badge No. DS001; | ) |
| THE CITY OF MOUNT VERNON; P.O. PATRICK KING, | ) |
| Badge No. 2113; P.O. HOWARD, Badge No. | ) |
| 2163; POLICE COMMISSIONER SHAWN HARRIS; | ) No. 21-cv-01877 |
| POLICE COMMISSIONER GLENN SCOTT; COUNTY | ) |
| OF WESTCHESTER; COMMISSIONER MARTIN J. | ) |
| MCGLYNN; COMMISSIONER THOMAS A. GLEESON; | ) |
| unidentified Westchester | ) |
| County Department of Public Service | ) |
| Narcotics employees and officers; | ) |
| and unidentified | ) |
| Mount Vernon Police Department employees | ) |
| and officers, | ) |
| Defendants. | ) |

**Plaintiff's Memorandum of Law in Opposition to Defendants
City of Mount Vernon's and Westchester County's Motions to Dismiss**


Heather Lewis Donnell
LOEVY & LOEVY
311 N Aberdeen St.
3rd Floor
Chicago, Illinois 60607

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. i

INTRODUCTION ...............................................................................................................1

STATEMENT OF FACTS ...................................................................................................2

STANDARD OF REVIEW .................................................................................................3

ARGUMENT ......................................................................................................................4

    I.      Plaintiff Has Stated a Plausible Municipal Liability Claim ..........................................4

          A.  The FAC Alleges Sufficient Facts to Meet the Plausibility Standard ...............6

          B.  Plaintiff has Alleged Sufficient Facts to Support Claim of Widespread Practice ...........................................................................................................8

          C.  Defendants' Cases Are Distinguishable ..........................................................12

          D.  Plaintiff Plausibly Alleges an Alleges and Official Policy or Custom ............14

          E.  Plaintiff Plausibly Demonstrates a Direct Causal Link Between the Municipal Defendants' Policy, Practice, and Custom and the Plaintiff's Constitutional Injuries .........................................................................................................16

          F.  Plaintiff Plausibly Alleges Failure to Train or Supervise ................................17

    II.     The Challenged State Law Claims Should Be Dismissed Without Prejudice .............18

    III.    Should the Court Find Defendants' Arguments Meritorious, Plaintiff Requests the Opportunity to Amend the Complaint to Cure Any Deficiencies Identified by the Court ..........................................................................................................................19

CONCLUSION....................................................................................................................19

# TABLE OF AUTHORITIES

*Accord Cash v. County of Erie*, 654 F.3d 324 (2d Cir. 2011) ......................................15

*Acquah v. City of Syracuse*, No. 18-CV-1378, 2019 WL 3975463,
(N.D.N.Y. Aug. 22, 2019) ...........................................................................................9

*Amnesty Am. v. Town of Hartford*, 361 F.3d 113 (2d Cir. 2004) ..................................9

*Arista Records, LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2010) ...................................4, 11

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................4

*Babi-Ali v. City of New York*, 979 F. Supp. 268 (S.D.N.Y. 1997)..................................8

*Bektic–Marrero v. Goldberg*, 850 F.Supp.2d 418 (S.D.N.Y. 2012)...............................13

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) ....................................................4

*Bertuglia v. City of New York*, 839 F. Supp. 2d 703 (S.D.N.Y. 2012) .......................4, 5

*Bethune v. Westchester Cnty.,* No. 18-CV-3500 (NSR), 2020 U.S. Dist. LEXIS 36013 2020
        WL1032508 (S.D.N.Y. Mar. 2, 2020) ................................................................. 12

*Boykin v. KeyCorp*, 521 F.3d 202 (2d Cir. 2008) ......................................................... 4

*Brandon v. City of New York*, 705 F. Supp. 2d 261
        (S.D.N.Y. 2010)................................................................................................. 6
*Brandon v. Westchester Cnty.,* No. 18-CV-3500 (NSR), 2020 WL 1032508 (S.D.N.Y. Mar. 2,
2020) ....................................................................................................................12

*Buari v. City of New York*, No. 1:18-CV-12299-MKV, 2021 WL 1198371 (S.D.N.Y. Mar. 30,
        2021) ......................................................................................................... 8, 13

*City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989)...........................................15, 16

*City of Oklahoma City v. Tuttle*, 471 U.S. 808 (1985)................................................. 16

*Cordero v. City of New York*, 282 F. Supp. 3d 549
        (E.D.N.Y. 2017)............................................................................................... 12

*Derdiarian v. Felix Contracting Corp.*, 434 N.Y.S.2d 166 (1980) ............................... 17

*Dixon v. City of New York,* 2017 U.S. Dist. LEXIS 119042 (S.D.N.Y. July 27, 2017) ............... 13

*DiPippo v. Cnty. of Putnam*, No. 17-cv-7948, 2019 WL 1004152 (S.D.N.Y. Feb. 28, 2019)........7

*Ferrari v. Cnty of Suffolk*, 790 F. Supp. 2d 34 (E.D.N.Y. 2011)..................................... 9

*Fiacco v. City of Rensselaer*, 783 F.2d 319 (2d Cir. 1986) ................................ 6, 10

*Fraser v. City of New York*, No. 20-CV-04926 (CM), 2021 WL 1338795
    (S.D.N.Y. Apr. 9,2021) ......................................................................... 13

*Fonseca v. City of Mount Vernon et al.*, 5459/2013 (N.Y. Sup. Ct.)......................... 7, 8

*Gavin v. City of New York*, No. 20-CV-8163 (JPO), 2021 WL 3774113,
    (S.D.N.Y. Aug. 24, 2021) ...................................................................... 7

*Giles v. City of Mount Vernon et al.,* 20 CV 5119 (PMH) ..............................................8

*Goldman v. Belden*, 754 F.2d 1059 (2d Cir. 1985).........................................................5

*Govan v. City of Mount Vernon et al.,*19 CV 8830 (S.D.N.Y.) .......................................8

*Graham v. Cty. of Erie*, No. 11-CV-605S, 2012 WL 1980609, (W.D.N.Y. May 31, 2012).........10

*Hart v. City of Binghamton*, No. 3:10–CV–1064, 2012 WL 1565085,
    (N.D.N.Y. May 2, 2012) ......................................................................16

*Hernandez v. United States*, 939 F.3d 191 (2d Cir. 2019)............................................ 4

*Higazy v. Templeton*, 505 F.3d 161 (2d Cir. 2007).........................................................17

*Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989) ............................................7

*JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 428 (2d Cir.
    2005) .................................................................................................16

*Keene v. City of Rochester*, No. 17-CV-6708, 2018 WL 1697486, (W.D.N.Y. Apr. 7, 2018) ......9

*Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*,
    507 U.S. 163 (1993) ...........................................................................5, 6

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC,* 797 F.3d 160(2d Cir. 2015).............19

*Martin v. City of New York*, 793 F. Supp. 2d 583 (E.D.N.Y. 2011) .............................17

*McCants v. City of Newburgh*, No. 14 CV 556 VB, 2014 WL 6645987, (S.D.N.Y. Nov. 21,
    2014) ................................................................................................11

*McCants v. City of Newburgh*, No. 14 CV 556 VB, 2014 WL 7398910
    (S.D.N.Y. Dec. 9, 2014)......................................................................11

*McCrary v. County of Nassau*, 493 F.Supp.2d 581 (E.D.N.Y. 2007) .............................5

*Nelson v. City of New York*, No. 18 Civ. 4636 (PAE), 2019 WL 3779420

(S.D.N.Y. Aug. 9, 2019) ............................................................................................17

*Nielsen v. Rabin*, 746 F.3d 58 (2d Cir. 2014) ..............................................................4

*Nunez v. City of Mount Vernon et al.,* 14 CV 08530 (S.D.N.Y)...................................7

*Outlaw v. City of Hartford*, 884 F.3d 351 (2d Cir. 2018)............................................10

*Pettiford v. City of Yonkers*, 2021 U.S. Dist. LEXIS 11618 (S.D.N.Y. June 21, 2021)...............15

*Reynolds v. Giuliani*, 506 F.3d 182 (2d Cir. 2007)..........................................7, 10, 15

*Ricciuti v. N.Y.C. Transit Auth.,* 941 F.2d 119 (2d Cir. 1991)......................................12

*Scalpi v. Town of E. Fishkill*, No. 14-CV-2126 (KMK), 2016 U.S. Dist. LEXIS 24530 (S.D.N.Y. Feb. 26, 2016) ...................................................................................12

*Schoolcraft v. City of New York*, 103 F. Supp. 3d 465 (S.D.N.Y. 2015).....................16

*Scott v. City of Mount Vernon* 14 CV 4441 (S.D.N.Y).................................................7

*Scott v. Westchester Cty.,* 434 F. Supp. 3d 188 (S.D.N.Y. 2020)................................14

*Tieman v. City of Newburgh*, No. 13–CV–4178 (KMK), 2015 WL 1379652 (S.D.N.Y. Mar. 26, 2015) ......................................................................................16

*Triano v. Town of Harrison*, 895 F. Supp. 2d 526 (S.D.N.Y. 2012) ...........................13

*Vann v. City of New York*, 72 F.3d 1040 (2d Cir. 1995).............................................6, 9

*Vann v. City of Rochester*, No. 18-cv-6464, 2019 WL 1331572 (W.D.N.Y. Mar. 25, 2019......9,10

*Walker v. City of New York*, 974 F.2d 293(2d Cir. 1992) ............................................18

*Zahra v. Town of Southold*, 48 F.3d 674 (2d Cir. 1995)...............................................5

## STATUTES AND OTHER AUTHORITIES

Fed. R. Civ. P. 8(a)(2)....................................................................................................6

Fed. R. Civ. P. 8(d)(2)..................................................................................................19

**INTRODUCTION**

The detailed allegations and legal theories set forth in Plaintiff's First Amended Complaint ("FAC") are not subject to dismissal for the reasons advanced by Defendants, the City of Mount Vernon (the "City"), Westchester County (the "County") (together, the "Municipal Defendants"), or Defendants Det. Camilo R. Antonini, Det. Sgt. Sean J. Fegan, P.O. Patrick King and P.O. Howard, or the unidentified Westchester County Department of Public Safety officer Defendants (the "Individual Defendants" or "Defendant Officers") (collectively, "Defendants"). The FAC alleges facts which support a plausible inference that the Municipal Defendants maintained unconstitutional customs, practices, and policies that condoned and encouraged the Individual Defendants' misconduct.

Defendants attempt to dismiss Plaintiff's well-pled complaint by ignoring, minimizing, and misstating his allegations, but a fair review of the FAC shows that Plaintiff has more than met his burden. The facts are sufficiently detailed to survive a motion to dismiss, and will be strengthened and expanded through discovery proceedings. With respect to the negligent screening, hiring and retention and negligent training and supervision, these claims are permissibly pleaded in the alternative and should not be dismissed at this pre-discovery stage when the full facts have yet to be developed.

For these reasons and those that follow, the Defendants' Motions to Dismiss certain claims should be denied in their entirety. In the alternative, should the Court find any of Defendants' arguments for dismissal meritorious, Plaintiff respectfully requests the opportunity to further amend the complaint.

## STATEMENT OF FACTS

On July 26, 2017, while Henderson Clarke was visiting family in North Carolina, the Defendant Officers were conducting an undercover narcotics sting operation in Mount Vernon, New York (FAC ¶¶ 22, 32). As part of this operation, the Defendant Officers falsely claimed, including in sworn paperwork, that Mr. Clarke sold narcotics to an undercover officer from the Westchester County Department of Public Safety (WCDPS) in the City of Mount Vernon. These claims were supported by false and fabricated evidence, including narcotics and "buy money", and resulted in the filing of a false felony complaint, sworn to by defendant Antonini on April 24, 2018. (*Id.* ¶ 31).

On the basis of these false and fabricated documents and evidence, Mr. Clarke was falsely arrested on July 23, 2019 by defendant Antonini and others and charged with violating N.Y. Penal Law § 220.39(1), Criminal Sale of a Controlled Substance in the Third Degree, a B Felony. (*Id.* ¶ 31). The criminal charges against him were ultimately dismissed.

The undercover narcotics operation -- "Operation Crackdown" -- was authorized and overseen at the highest levels of City and County government, as evidenced by the Westchester County District Attorney and City of Mount Vernon's publication of the arrests, including through press releases and press conferences, at which then-Mayor Richard Thomas and then-MVPD Police Chief Shawn Harris described the operation and congratulated the law enforcement officers from the City and County that participated. (*Id.* ¶¶ 32-37). Operation Crackdown ultimately resulted in more than 22 arrests; those arrests were resolved by dismissal or by very favorable plea deals. (*Id.* ¶ 66).

Narcotics enforcement in the City of Mount Vernon -- often conducted by prestigious joint task forces featuring members of the County and City law enforcement working together -- has long been plagued by reports and allegations of police misconduct, including by the

Defendant Officers. The Municipal Defendants were aware of, and received, these reports and allegations prior to Mr. Clarke's arrest but took no action to investigate, correct, discipline, train, or take other remedial measures. (*Id.* ¶¶ 74-77). The reports and allegations of misconduct -- detailed in the FAC and the documents incorporated by reference therein -- include "fabricating crimes, falsifying reports, illegally detaining individuals who have committed no crime, hiding exculpatory evidence from prosecutors, and standing by while innocent people are prosecuted for crimes they did not commit". (*Id.* ¶ 67). Thus, the Municipal Defendants have long been on notice that "members of the MVPD Narcotics Unit and the WCDPS Narcotics Unit were known to have fabricated evidence, planted narcotics, coerced false identifications, acted in a racist and discriminatory manner, used excessive force, and generally engaged in misconduct in other cases and arrests, or stood idly by while their colleagues . . . engaged in such misconduct." (*Id.* ¶ 71).

Despite these reports and the Municipal Defendants' awareness of misconduct by the Defendant Officers, the Municipal Defendants took no action to address the pervasive misconduct by the Defendant Officers; instead, the Defendant Officers were promoted and given increasingly more prestigious opportunities, including participating in joint task forces. (*Id.* ¶ 78). As a result of these promotions and prestigious opportunities, the Municipal Defendants created greater opportunities for the Defendant Officers to violate the constitutional rights of individuals, including Mr. Clarke. Had the Defendant Officers been properly disciplined, trained, and/or supervised, as the reports and complaints of their misconduct required, the Defendant Officers would not have been in a position to violate Mr. Clarke's rights, as they did in the absence of any corrective action by the Municipal Defendants.

## STANDARD OF REVIEW

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "A Rule 12 motion must be denied if the complaint includes factual allegations that when taken as true "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 570 (2007); *see also Arista Records, LLC v Doe 3,* 604 F.3d 110, 120 (2d Cir. 2010) (applying *Twombly*).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alternations, internal quotation marks, and citations omitted). In ruling on a motion to dismiss, the Court must "accept as true all factual allegations and draw from them all reasonable inferences" in favor of the plaintiff. *Hernandez v. United States*, 939 F.3d 191, 198 (2d Cir. 2019) (quoting *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014)). The Court must accept facts alleged upon information and belief "where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (citations omitted) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009)); *see also Boykin v. KeyCorp*, 521 F.3d 202, 215 (2d Cir. 2008). In evaluating a motion to dismiss, a court's task is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." *Bertuglia v. City of New*

*York*, 839 F. Supp. 2d 703, 713 (S.D.N.Y. 2012) (quoting *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985)).

It is well-settled that a *Monell* claim against a municipality is not judged by a heightened pleading standard and most only comport with the notice pleading requirements of Federal Rule of Civil Procedure 8 and provide a "short and plain statement of the claim." *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993) (quoting Fed. R. Civ. P. 8(a)(2), however, the statement of the claim must at least give the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.*; *see also id.* at 168-69.

## ARGUMENT

### I.   Plaintiff Has Stated a Plausible Municipal Liability Claim

*Monell* claims are not subject to a "heightened" pleading standard beyond that defined in Rule 8(a)(2). *Leatherman*, 507 U.S. at 168-69. To survive a motion to dismiss, Plaintiff must plead sufficient facts that "(1) an official custom or policy that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *McCrary v. County of Nassau*, 493 F.Supp.2d 581, 588 (E.D.N.Y. 2007) (citing *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995)). A plaintiff can satisfy the policy requirements by alleging either "(1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policymaker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the

municipal employees." *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010) (citations omitted). *See also Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995) ("A § 1983 plaintiff injured by a police officer may establish the pertinent custom or policy by showing that the municipality, alerted to the possible use of excessive force by its police officers, exhibited deliberate indifference."); *Fiacco v. City of Rensselaer, N.Y.*, 783 F.2d 319, 327 (2d Cir. 1986) (A municipality "should not take a laissez-faire attitude toward the violation by its peace officers of the very rights they are supposed to prevent others from violating. A principle that would give a municipality immunity from § 1983 liability for injury caused by its deliberate indifference to its police officers' use of excessive force in violation of constitutional principles would foster the denial—both by policemen and by civilians—of the very rights the city is responsible for safeguarding.").

Here, Defendants argue that the FAC fails to state a *Monell* claim because Plaintiff has failed to sufficiently plead a formal policy or practice, a consistent widespread unlawful practice, or a failure to adequately train or supervise and has failed to allege that City policymaking officials caused his injuries. *See* City Def. Mem. at 3-12; County Def. Mem. at 9-15. The City Defendants also argue that the FAC fails to demonstrate a direct causal link between the City's policy or custom and Plaintiff's alleged constitutional injury. Each of the Defendants' arguments are meritless.

**A. The FAC Alleges Sufficient Facts to Meet the Plausibility Standard**

Plaintiff's allegations are more than sufficient to meet the plausibility standard to survive a motion to dismiss. *Leatherman*, 507 U.S. at 168-69. "*Monell*'s policy or custom requirement is satisfied where a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its

subordinates' unlawful actions." *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007) (citing *Jett v. Dallas Indep. Sch. Dist*., 491 U.S. 701, 737 (1989)). Plaintiff has met that burden here.

Plaintiff's operative complaint includes allegations of prior citizen complaints made against Defendants as well as at least five specific incidents of prior misconduct to sufficiently provide notice of his *Monell* claims that the City of Mount Vernon and Westchester County had a widespread practice of violating rights by fabricating evidence to meet the notice pleading standards. (FAC ¶¶70 & 74-75). "[T]he pre-discovery pleading standard for a [*Monell*] custom or practice is not a high bar, and just a handful of instances of similar unconstitutional misconduct, in addition to a plaintiff's own experience, can warrant proceeding to discovery. *Gavin v. City of New York*, No. 20-CV-8163 (JPO), 2021 WL 3774113, at *4 (S.D.N.Y. Aug. 24, 2021) (quoting in part *DiPippo v. Cnty. of Putnam*, No. 17-cv-7948, 2019 WL 1004152, at *9 (S.D.N.Y. Feb. 28, 2019)) (internal quotation marks omitted).

First, in Paragraph 70 of the FAC, Plaintiff alleged that

> Defendants City of Mount Vernon and County of Westchester were aware from numerous complaints from civilians and police officers alike, civil rights lawsuits, notices of claims, and other information, which were provided to Defendants City of Mount Vernon and County of Westchester prior to Mr. Clarke's arrest, that MVPD officers, including Defendants Antonini and Fegan, as well as others within the MVPD Narcotics Unit (of which Defendants King, Howard and other Defendant Officers were members) and the WCDPS Narcotics Unit routinely engaged in the type of egregious misconduct at issue here.

(FAC ¶70).

Second, in paragraph 74, Plaintiff identified five civil lawsuits that include allegations of similar misconduct, including allegations of other individuals who had been falsely arrested or where evidence of narcotics crimes had been fabricated and used against them. Dkt. 35 at ¶74 (referring to *Scott v. City of Mount Vernon et al.,* 14 CV 4441 (S.D.N.Y.); *Nunez v. City of Mount Vernon et al.,* 14 CV 08530 (S.D.N.Y.); *Fonseca v. City of Mount Vernon et al*.,

7

5459/2013 (N.Y. Sup. Ct.); *Govan v. City of Mount Vernon, et al.*, 19 CV 8830 (S.D.N.Y.); *Giles v. City of Mount Vernon et al.,* 20 CV 5119(PMH).

Plaintiff further alleged that Mt. Vernon police officer, Murashea Bovell, made complaints of misconduct to the Department, including an allegation that Officer Bovell had recorded officers "recount[ing]specific incidents of misconduct involving Defendants Antonini, Fegan, King" and others. Dkt. 35 at ¶75.[1]

The operative question is whether the cited material bears a connection to the "specific factual allegations of the plaintiff's case." *See Buari v. City of New York*, No. 1:18-CV-12299-MKV, 2021 WL 1198371, at *53 (S.D.N.Y. Mar. 30, 2021). Here, there is ample connection between the allegations contained in the FAC sufficient at the pleading stage.[2]

### B. Plaintiff has Alleged Sufficient Facts to Support Claim of a Widespread Practice

To the extent that Defendants contend that Plaintiff failed to allege sufficient number of prior instances to meet the *Monell* pleading standard, no requirement exists that Plaintiff must plead a particular number or type of specific examples of misconduct to support a *Monell* claim at the pleading stage. *See, e.g., Babi-Ali v. City of New York*, 979 F. Supp. 268 (274) (S.D.N.Y. 1997) (*Monell* claim upheld where plaintiff cited nine *Brady* violations over several years); *Fiacco*, 783 F.2d at 331 (jury verdict affirmed where five prior police incidents over five years,

---

[1]    Plaintiff's complaint also included reference to several articles reporting similar allegations of misconduct by Defendants and other officers. Dkt. 35 at fn. 2-7. As discussed *supra*, if granted leave to amend, Plaintiff can more fully incorporate the allegations reported in those articles into his complaint.

[2]    Subsequent to Plaintiff filing his FAC, the Westchester County District Attorney's has called on the United States Department of Justice to investigate the Mount Vernon Police Department "for pervasive and persistent alleged civil rights violations including unlawful strip searches, excessive use of force, and other misconduct." *See* Westchester County District Attorney Office Press Release, *DA Rocah Calls on U.S. Dept. of Justice to Investigate Mount Vernon Police Department* (April 30, 2021) available at: https://www.westchesterda.net/april-2021/6650-da-rocah-calls-on-u-s-dept-of-justice-to-investigate-mount-vernon-police-department. If granted leave to amend, Plaintiff could incorporate the District Attorney's request for a DOJ investigation as well.

with additional evidence of lack of discipline and police department indifference sufficient to uphold a verdict of municipal liability); *Amnesty Am. v. Town of Hartford*, 361 F.3d 113, 129 (2d Cir. 2004) (single "egregious" incident enough to support *Monell*).

The five incidents in the complaint as well as the allegations that the Mount Vernon Police Department had received prior similar complaints of misconduct of these officers and others suffice at the pleading stage. *See, e.g.*, *Bertuglia v. City of New York*, 839 F. Supp. 2d 703, 738 (S.D.N.Y. 2012) (denying motion to dismiss where "[t]he Amended Complaint points to over fifteen cases where City prosecutors allegedly committed misconduct, and alleges the existence of many more such cases in the form of unpublished opinions. . . ."); *Ferrari v. Cnty. of Suffolk*, 790 F. Supp. 2d 34, 46 (E.D.N.Y. 2011) (denying motion to dismiss where three instances, including plaintiff's own involving claim of denial of due process by hearing officers was sufficient basis for a the plausible inference of a widespread practice or informal custom); *Acquah v. City of Syracuse*, No. 18-CV-1378, 2019 WL 3975463, at *5 (N.D.N.Y. Aug. 22, 2019) (denying motion to dismiss *Monell* claim against city where plaintiff alleged five specific instances of excessive force by Syracuse police officers, which plausibly supported plaintiff's claim that city's deliberately indifferent failure to train, supervise, and discipline its officers caused the violation of his constitutional rights); *Keene v. City of Rochester*, No. 17-CV-6708, 2018 WL 1697486, at *4 (W.D.N.Y. Apr. 7, 2018) (motion to dismiss denied where plaintiff had alleged a pattern existed of police officers engaging in unlawful, excessive uses of force, and that based on at least eight instances between 2002 and 2014 in which the city was aware that its police officers had used excessive force in detaining arrestees, but it did not perform a meaningful investigation into those instances, and failed to discipline the officers); *Vann v. City of Rochester*, No. 18-cv-6464, 2019 WL 1331572, at *8 (W.D.N.Y. Mar. 25, 2019) (denying

motions to dismiss based on sixteen prior incidents); *Graham v. Cty. of Erie*, No. 11-CV-605S, 2012 WL 1980609, at *5 (W.D.N.Y. May 31, 2012) (denying motion to dismiss based on several allegations of similar misconduct of provision of jail medical services based on several instances reported in a Department of Justice report).

Moreover, Plaintiff can rely on allegations of other similar misconduct in the form of other complaints of police officer misconduct whether or not that incident resulted in a sustained finding, discipline or adjudication on the merits of the alleged violation. Indeed, that is frequently what plaintiffs alleging *Monell* violations must rely upon. "*Monell* liability, by its nature, will often turn on evidence concerning victims other than the plaintiffs and alleged misfeasors other than the individual defendants. In addition, a given officer's disciplinary history may be probative of whether it was foreseeable to the municipality that the officer would engage in misconduct yet again." *Outlaw v. City of Hartford*, 884 F.3d 351, 380 (2d Cir. 2018) *See, e.g.*, *Reynolds*, 506 F.3d at 192 (A municipality may be found to have a custom that causes a constitutional violation when "faced with a pattern of misconduct" it "does nothing, compelling the conclusion that [it] has ... tacitly authorized ... unlawful actions"); *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995) (plaintiff may demonstrate deliberate indifference of the municipality by showing "of repeated complaints of civil rights violations; deliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents."); *Fiacco v. City of Rensselaer, N.Y.*, 783 F.2d 319, 328 (2d Cir. 1986) (affirming the trial court's admission of evidence of other police officer complaints of use of excessive force as *Monell* evidence because "[w]hether or not the claims had validity, the very assertion of a number of such claims put the City on notice that there was a possibility that its police officers had used excessive force. The City's knowledge of

these allegations and the nature and extent of its efforts to investigate and record the claims were pertinent to Fiacco's contention that the City had a policy of nonsupervision of its policemen that reflected a deliberate indifference to their use of excessive force"); *McCants v. City of Newburgh*, No. 14 CV 556 VB, 2014 WL 6645987, at *4 (S.D.N.Y. Nov. 21, 2014), *clarified on denial of reconsideration,* No. 14 CV 556 VB, 2014 WL 7398910 (S.D.N.Y. Dec. 9, 2014) (denying city's motion to dismiss plaintiff's *Monell* claim based on failure to train and supervise officers regrading use of excessive force where complaint included seventeen other allegations in a seven year time period stating "it matters not that the instances only prove a claimant asserted a violation, because they evidence the City was on notice to the possible use of excessive force by its police officers on seventeen different occasions.").

In contrast to the cases relied upon by Defendants, the FAC sets forth extensive factual allegations that support a plausible inference of municipal liability. The FAC describes and cites "complaints from civilians and police officers alike, civil rights lawsuits, notices of claims, and other information, which were provided to Defendants City of Mount Vernon and County of Westchester prior to Mr. Clarke's arrest", including misconduct that is similar to the misconduct alleged here, engaged in by the same Defendant Officers during the same time period. (FAC ¶¶ 70, 75-78). Some of the materials cited in the FAC -- such as confidential civilian and police complaints -- are within the control of Defendants, but the FAC incorporates and references investigative news articles that describe those very confidential sources. *Arista Records, supra,* at 120.

In addition, the investigative news articles referenced in Plaintiff's complaint detail the very same types of misconduct alleged here, perpetrated by some of the same Defendant Officers, with the knowledge of the Municipal Defendants, during the relevant period.  *See* FAC

¶ 73, n.3 and ¶ 76, n.7. These newspaper articles set forth additional allegations that further support Plaintiff's allegations, that if the Court is inclined, Plaintiff could incorporate more fully into his complaint with leave to amend. *See, e.g.*, *Ricciuti v. N.Y.C. Transit Auth.,* 941 F.2d 119, 124 (2d Cir. 1991) (reversing grant of motion to dismiss where plaintiff's allegations of other incidents of transit authority police were based on reports of prior misconduct defendants claimed were inadmissible hearsay explaining that "[t]he fact that a pleading contains references to documents that may eventually be ruled inadmissible in evidence is not a proper basis for dismissal pursuant to Rule 12(b)(6)" . . . "evidentiary flaws in documents described in a pleading are not a basis for dismissal for failure to state a claim."); *Cordero v. City of New York*, 282 F. Supp. 3d 549, 563 (E.D.N.Y. 2017) ("[n]ewspaper articles, reports, and other documents may provide sufficient documentary evidence for *Monell* liability). Indeed, Plaintiffs could rely on newspaper reports and accounts for non-hearsay purposes such as to demonstrate notice. *Id.* at 123 ("the reports cited by plaintiffs would not be hearsay if they were offered for the purpose of proving something other than the truth of the matters stated therein, such as whether appellees had notice.").

## C. Defendants' Cases are Distinguishable

Finally, the cases relied upon by Defendants to argue inadequate pleading are telling, as each of those cases involved complaints completely devoid of any relevant facts, unlike the FAC. For example, in *Scalpi v. Town of E. Fishkill*, No. 14-CV-2126 (KMK), 2016 U.S. Dist. LEXIS 24530, at *21 (S.D.N.Y. Feb. 26, 2016), the complaint as described in the decision contained no facts that support any constitutional violation, much less make out a *Monell* claim. *Bethune v. Westchester Cnty.,* No. 18-CV-3500 (NSR), 2020 U.S. Dist. LEXIS 36013, 2020 WL 1032508, at *5 (S.D.N.Y. Mar. 2, 2020) merely identified two civil cases, without any additional factual

support.  The other cases relied upon by the Defendants lack the factual detail contained within the FAC, which is instead akin to those complaints that have survived motions to dismiss for failure to adequately plead municipal liability.  *See, e.g., Buari v. City of New York*, *supra* (government reports describing similar misconduct sufficient to allege *Monell* and survive motion to dismiss); *Fraser v. City of New York*,  No. 20-CV-04926 (CM), 2021 WL 1338795, at *10 (S.D.N.Y. Apr. 9, 2021) (allegations that the "absence of a policy requiring certain impeachment evidence to be disclosed – resulted in the *Brady* violation in his case, and amounted to "deliberate indifference to the constitutional rights" of citizens who are "prosecuted for alleged criminal activities" supported by filed civil rights lawsuits making similar allegations against the defendant officer sufficient to survive a motion to dismiss); *Bektic–Marrero v. Goldberg*, 850 F.Supp.2d 418, 431 (S.D.N.Y. 2012) (denying motion to dismiss *Monell* claim where the plaintiff identified  a United States Department of Justice ("DOJ") report that concluded that the county defendant's "provision of medical care to inmates was constitutionally deficient in several respects," and "high-ranking prison officials were advised of the DOJ's preliminary findings").

The FAC is readily distinguished from complaints which have not survived motions to dismiss, such as *Triano v. Town of Harrison*, 895 F. Supp. 2d 526, 535 (S.D.N.Y. 2012), where plaintiff did not allege "any facts to support an inference that the Town had a custom or practice of tolerating police abuse, or of failing to discipline and supervise miscreant police officers" and "has not identified *any* details about other instances of police misconduct, either by [the individual officer] or other officers . . . nor has he identified any reports or investigations which suggest deficiencies in the Town's misconduct review process" and *Dixon v. City of New York,* 2017 U.S. Dist. LEXIS 119042, at *21 (S.D.N.Y. July 27, 2017), where the plaintiff only alleged

her single interaction with police and relied on a report that post-dated her arrest by four years and therefore did not put the municipal defendants on notice.

Defendants' attempt to diminish Plaintiff's other incidents as unrelated and their reliance also fails. *See, e.g.*, Def. City of Mt. Vernon Br. at 7-8. All five of the civil suits involve allegations of false arrests, two of which also include allegations of being framed for narcotics offenses just like Mr. Clarke has alleged here. (FAC ¶74). Moreover, Defendants' reliance on the outcome of the cases, such as those settled with a denial of liability, or those that also included allegations of excessive force in addition to false arrests, should not basis for dismissal at this stage. *Fiacco*, 783 F.2d at 328. Defendant City of Mt. Vernon's reliance on is inapposite. In that case the plaintiff did "not provide any factual details about those lawsuits, nor does he explain how those lawsuits amount to a municipal policy or custom. Indeed, it is unclear whether those lawsuits have anything to do with the allegations in his amended complaint." *Scott v. Westchester Cty.,* 434 F. Supp. 3d 188, 202 (S.D.N.Y. 2020). Here, Plaintiff's complaint includes factual information about the allegations in those lawsuits. (FAC ¶74).

### D. Plaintiff Plausibly Alleges an Official Policy or Custom

The FAC plausibly pleads an official policy or custom with the specificity required at this early stage of the proceedings. Plaintiff need not identify with absolute precision the municipal defendants' specific policy (or absence of policy) but instead must plausibly allege that such a policy, practice or custom exists.

In *Fraser*, where Plaintiff alleged that the NYPD lacked a policy concerning the disclosure of impeachment evidence, Chief Judge McMahon denied defendants' 12(c) motion and explained, "It remains to be seen whether policymakers at the NYPD truly had such a policy (or lack thereof) or were actually indifferent to the alleged constitutional violations taking place

under their watch. But we are not at present dealing with the merits. We are dealing with the pleadings. Looking only at them, Fraser has more than sufficiently alleged a *Monell* claim based on the NYPD's actions." *Id.* at *10 (citing *Buari*, *supra*). Plaintiff easily meets this burden.  The FAC alleges policies and widespread practices of "falsely arresting innocent people, planting and/or fabricating evidence, and falsifying police reports and other official documents . . . failing to adequately train and supervise MVPD and WCDPS employees on their obligations not to falsify and plant or fabricate evidence, falsify official documents, and falsely arrest, or maliciously prosecute individuals . . . failing to discipline officers who . . . falsify and plant evidence. fabricate and falsify official documents, and falsely arrest, or malicious prosecute individuals . . . failing to intervene to prevent individual employees from violating citizens' constitutional rights."  (FAC ¶¶ 84-87). These allegations, taken together with the facts alleged throughout the FAC (and described *supra*) more than meet the plausibility standard.

    *Monell* liability will apply where "a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that" it has "tacitly authorized its subordinates' unlawful actions." *Reynolds*, 506 F.3d at 192.  Repeated and consistent conduct can indicate a municipality's involvement or acquiescence to a deprivation of liberty. *See City of Canton*, 489 U.S. 278, 395 (1989) (holding that a municipality's "policy of inaction" may rise to "the functional equivalent of a decision by the city itself to violate the constitution").  *Accord Cash v. County of Erie,*654 F.3d 324, 334 (2d Cir. 2011)) ("[W]here a policymaking official exhibits deliberate indifference to constitutional deprivations caused by subordinates, such that the official's inaction constitutes a deliberate choice, that acquiescence may be properly thought of as a city policy or custom that is actionable under § 1983.").

As is set forth *supra,* the FAC has identified numerous incidents, known to the Municipal Defendants, which bear striking similarity to the incident in question, and which the Municipal Defendants responded to with a policy of inaction. *See Tieman v. City of Newburgh*, No. 13–CV–4178 (KMK), 2015 WL 1379652, at *21 (S.D.N.Y. Mar. 26, 2015) (quoting *Hart v. City of Binghamton*, No. 3:10–CV–1064, 2012 WL 1565085, at *5 (N.D.N.Y. May 2, 2012)); *Vann*, 72 F.3d at 1049 ("[d]eliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents.").

### E. Plaintiff Plausibly Demonstrates a Direct Causal Link Between the Municipal Defendants' Policy, Practice, and Custom and the Plaintiff's Constitutional Injuries

Only Defendant City of Mount Vernon raised the issue that Plaintiff's complaint failed to allege sufficient facts to support a causal link between its policy and Plaintiff's alleged constitutional violations. Def. City Mem. at 11-12. Defendant Westchester County has waived this argument by failing to raise it in its opening brief. *JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 428 (2d Cir. 2005).

In addition to showing a policy or custom, a plaintiff must demonstrate an affirmative causal link between an official policy or custom and the plaintiff's injury to support municipal liability. *See Batista*, 702 F.2d at 397. The policy must be "closely related to" or the "moving force behind" the ultimate injury. *City of Canton*, 489 U.S. at 389, 39 (alteration omitted); *accord City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824 n.8 (1985) ("The fact that a municipal 'policy' might lead to 'police misconduct' is hardly sufficient to satisfy *Monell's* requirement that the particular policy be the 'moving force' behind a constitutional violation. There must at least be an affirmative link between the training inadequacies alleged, and the particular

constitutional violation at issue.").  Additionally, a plaintiff must show that the municipal

defendant's actions proximately caused his injuries. *See Nelson v. City of New York*, No. 18 Civ.

4636 (PAE), 2019 WL 3779420, at *8 (S.D.N.Y. Aug. 9, 2019) ("§ 1983 actions embed 'the tort

principle of proximate causation.'") (quoting *Higazy v. Templeton*, 505 F.3d 161, 175 (2d Cir.

2007)). Thus, "an intervening act or omission that is 'extraordinary under the circumstances' and

... 'not foreseeable in the normal course of events' ... may break the causal chain of events and

remove liability from an earlier acting defendant." *Martin v. City of New York*, 793 F. Supp. 2d

583, 586 (E.D.N.Y. 2011) (quoting *Derdiarian v. Felix Contracting Corp.*, 434 N.Y.S.2d 166,

169 (1980)).

The FAC plausibly alleges causation, by asserting that the Municipal Defendants' policy

and custom of inaction, together with the promotion of the Defendant Officers to positions of

greater responsibility and prestige, were the "moving force behind" plaintiff's injury.  (FAC ¶¶

76-79, 88-90). Plaintiff has also alleged that the City and County "failed to adequately train and

supervise them" (FAC ¶78). These actions by the Municipal Defendants gave the Defendant

Officers greater access to individuals such as Plaintiff and greater freedom to pursue narcotics

investigations and enforcement knowing there would be no oversight or consequences to their

misconduct, allowing them to continue to engage in the misconduct that resulted in Plaintiff's

injuries.

### F.  Plaintiff Plausibly Alleges Failure to Train or Supervise

As is described *supra*, the FAC plausibly alleges that the Municipal Defendants failed to

adequately train or supervise their employees on their duties not to falsify or plant evidence,

fabricate or falsify official documents, or falsely arrest or maliciously prosecute individuals.

(FAC ¶¶ 86-87).  These allegations meet the requirement that a plaintiff allege a "specific

deficiency" in training.  *Pettiford v. City of Yonkers*, 2021 U.S. Dist. LEXIS 11618, at *24 (S.D.N.Y. June 21, 2021).

The Second Circuit sets forth three prerequisites to a finding that a municipality's inaction constitutes deliberate indifference as is required to sustain a failure to train or supervise-based *Monell* claim: (1) the policymaker knows "to a moral certainty" that their employees will confront a given situation; (2) "the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or ... there is a history of employees mishandling the situation;" and (3) mishandling the situation will "frequently cause the deprivation of a citizen's constitutional rights." *Walker v. City of New York*, 974 F.2d 293, 297–98 (2d Cir. 1992).  Here, each of these requirements has been plausibly pleaded.  First, the Municipal Defendants' employees will confront a given situation -- narcotics investigations and enforcement.  Second, as described *supra*, there is a history of employees mishandling narcotics investigations and enforcement.  Third, mishandling of narcotics investigations and enforcements will frequently cause the deprivation of citizens' constitutional rights.  *Accord Fraser, supra*.

## II.     The Challenged State Law Claims Should Be Dismissed Without Prejudice

Plaintiff properly pleaded the challenged state law claims for negligent screening, hiring, and retention, and negligent training and supervision, in the alternative.  FED. R. CIV. P. 8(d)(2). Because the City Defendants have now admitted that the individual City Defendants were acting under color of law and within the scope of their employment (City Mem. at 13), Plaintiff agrees that the challenged state law claims should be dismissed without prejudice.  *Schoolcraft v. City of New York*, 103 F. Supp. 3d 465, 521 (S.D.N.Y. 2015).

III. **Should the Court Find Defendants' Arguments Meritorious, Plaintiff Requests the Opportunity to Amend the Complaint to Cure Any Deficiencies Identified by the Court**

To the extent the Court finds any of the Defendants' arguments for partial dismissal meritorious, Plaintiff respectfully requests that he be permitted to amend his complaint in accordance with the Court's ruling. *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC,* 797 F.3d 160, 189–91 (2d Cir. 2015).

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully request that the Defendants' motions to dismiss Plaintiff's *Monell* claim be denied.

Dated: October 6, 2021

Respectfully submitted,

**Henderson Clarke**

Heather Lewis Donnell
Anand Swaminathan
LOEVY & LOEVY
311 N Aberdeen Street
3rd Floor
Chicago, Illinois 60607

/s/ Heather Lewis Donnell
One of Plaintiff's attorneys

*Via Email to*:

Marykate Acquisito
Steven J. Bushnell
THE QUINN LAW FIRM, PLLC
*Attorneys for City of Mount Vernon Defendants*

Loren Zeitler, Esq.
Westchester County Department of Law
*Attorneys for Westchester County Defendants*