UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HENDERSON CLARKE,

                              Plaintiff,

        -against-

DET. CAMILO R. ANTONINI, *Badge No. D111*,
DET. SGT. SEAN J. FEGAN, *Badge No. DS001*,
THE CITY OF MOUNT VERNON, P.O. PATRICK
KING, *Badge No. 2113*, P.O. HOWARD, *Badge No.
2163*, COUNTY OF WESTCHESTER,
UNIDENTIFIED WESTCHESTER COUNTY
DEPARTMENT OF PUBLIC SERVICE
NARCOTICS EMPLOYEES AND OFFICERS, and
UNIDENTIFIED MOUNT VERNON POLICE
DEPARTMENT EMPLOYEES AND OFFICERS,

                              Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___09/22/2022___

No. 21 Civ. 1877 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Plaintiff Henderson Clarke brings this civil rights action asserting a variety of claims under

42 U.S.C. § 1983 and New York State law, alleging that he was falsely arrested and maliciously

prosecuted for selling crack cocaine to an undercover police officer in Mount Vernon, New York—

an offense he could not have committed because he was in North Carolina at the time of the alleged

offense. He sues Defendants Det. Camilo R. Antonini, Det. Sgt. Sean J. Fegan, The City of Mount

Vernon, P.O. Patrick King, P.O. Howard, and unidentified employees and officers from the Mount

Vernon Police Department (collectively, the "City Defendants"), as well Defendants the County

of Westchester and unidentified employees and officers from the Westchester County Department

of Public Service Narcotics (collectively, the "County Defendants") (all together, "Defendants").

Presently pending before the Court is the City Defendants' partial motion to dismiss (ECF

No. 45) and the County Defendants' motion to dismiss (ECF No. 49), both brought under Federal

Rule of Civil Procedure 12(b)(6). For the following reasons, the Court GRANTS IN PART and DENIES IN PART the City Defendants' and County Defendants' motions.

## BACKGROUND

### I.   Factual Background

The following facts are derived from the First Amended Complaint ("FAC," ECF No. 35) and are taken as true and constructed in the light most favorable to Plaintiff at this stage.

### A.   *The Defendant Officers Conspire to Fabricate False Documentation and Evidence Against Plaintiff*

On July 26, 2017, while Plaintiff was visiting family in North Carolina, officers Antonini, Fegan, King, Howard, and other unidentified officers from the Mount Vernon Police Department ("MVPD") and from the Westchester County Department of Public Safety ("WCDPS") (collectively, the "Defendant Officers"), were conducting an undercover narcotics sting operation in Mount Vernon, New York. (FAC ¶¶ 22–25.) As part of this operation, the Defendant Officers conspired together to falsely claim and produce sworn paperwork that Plaintiff sold narcotics to an undercover officer from the WCDPS in the City of Mount Vernon. Specifically, the Defendant Officers fabricated false official documents—including sworn police reports, evidence vouchers, and photocopies of cash that Plaintiff allegedly used as "buy money"—and false evidence—including five clear plastic knotted twists of crack cocaine and $100 in "buy money"—all of which the Defendant Officers used for filing of a false felony complaint dated April 24, 2018. (*Id.* ¶ 31.)

### B.   *The Press Release and Conference*

On May 7, 2018, the Westchester County District Attorney's Office (the "County DA's Office") issued a press release announcing twenty-two arrests in a multi-jurisdiction drug sweep, identifying the arrestees by name and identifying an additional six individuals—including Plaintiff—who had not yet been arrested but for whom warrants had been issued. (*Id.* ¶ 32.) Former

Mount Vernon Mayor Richard Thomas also held a press conference announcing the arrests, during which he explained that they were part of "Operation Crackdown," a yearlong investigation by various law enforcement agencies, including the MVPD and the Westchester County Police Department ("WCPD"). (*Id.* ¶¶ 33–34.) Mayor Thomas also repeatedly connected the low level drug transactions involved, including the false one with which Plaintiff was charged, to acts of terrorism against the United States, referencing the then-recent terrorist attack on New York City's West Side Highway that killed eight people and injured eleven. (*Id.* ¶ 35.) Employees of the City publicized Plaintiff's name and likeness in connection with Operation Crackdown, and his photograph was also included together with other photographs presented on the County DA's Office website. (*Id.* ¶ 38.)

C.      *Plaintiff is Falsely Arrested and Maliciously Prosecuted*

Nearly a year later, on July 23, 2019, based on the false documents and evidence they fabricated, the Defendant Officers arrested Plaintiff in White Plains, New York despite him repeatedly asserting his innocence to them. (*Id.* ¶¶ 40–46.) The Defendant Officers transported Plaintiff in an unmarked police car to Mount Vernon. (*Id.* ¶ 42.) The Defendant Officers forwarded the false documents and evidence they fabricated to the County DA's Office and also withheld exculpatory evidence. (*Id.* ¶¶ 47, 50.) As a result of these actions, the County DA's Office charged Plaintiff with violating N.Y. Penal Law § 220.39(1), Criminal Sale of a Controlled Substance in the Third Degree, a Class B Felony. (*Id.* ¶ 54.)

On July 26, 2019, Plaintiff entered a plea of not guilty through counsel and informed the court that he was out of state on the date of the alleged offense, presenting it with supporting evidence from his social media accounts. (*Id.* ¶ 56.) Plaintiff was incarcerated at the Valhalla Correctional Facility until July 27, 2019, after the court ultimately set bail in the amount of $5,000, spending in total five days incarcerated. (*Id.* ¶ 57.)

On September 16, 2019, the Defendant Officers took affirmative steps to cause a Superseding Misdemeanor Information against Plaintiff based on false and fabricated official documents and evidence. (*Id.* ¶ 59.) The Superseding Misdemeanor Information charged Plaintiff with violating N.Y. Penal Law § 220.03, Criminal Possession of a Controlled Substance in the Seventh Degree, a Class A Misdemeanor. (*Id.* ¶ 60.)

On January 9, 2020, the prosecution ultimately dismissed all criminal charges against Plaintiff. (*Id.* ¶ 63.) Plaintiff claims that he was never provided with either any incriminating or exculpatory evidence. (*Id.*) Plaintiff was compelled to appear in court in at least six occasions during a period of five months before the charges were finally dismissed. (*Id.* ¶¶ 58, 64.) Other arrests made in connection with "Operation Crackdown" were similarly resolved by dismissal or very favorable plea deals. (*Id.* ¶ 66.)

    D.    *Plaintiff's False Arrest and Malicious Prosecution Resulted from the City and County's Unconstitutional Policies, Customs, or Practices and Other Failures*

Plaintiff claims all of the above

> occurred as a direct result of the unconstitutional policies, customs, or practices of the Defendants City of Mount Vernon and County of Westchester, including, without limitation, the inadequate screening, hiring, retaining, training, and supervising of its employees, and pursuant to customs or practices of falsely arresting individuals, the falsification of evidence, and the failure to investigate or address allegations of police misconduct and abuse by the Defendants City of Mount Vernon and County of Westchester.

(*Id.* ¶ 65.)

Plaintiff further claims that his false arrest and malicious prosecution is not an isolated incident, as the City and County "have long been on notice about the illegal misconduct of MVPD officers and employees," including Antonini, Fegan, King, and Howard. (*Id.* ¶ 67.) This illegal misconduct includes "fabricating crimes, falsifying reports, illegally detaining individuals who have committed no crime, hiding exculpatory evidence from prosecutors, and standing by while

innocent people are prosecuted for crimes they did not commit." (*Id.* ¶ 68.) Prior to his arrest, Plaintiff claims that the City and the County have been aware of numerous complaints from civilians and police officers alike, civil rights lawsuits, notices of claims, and other information, that MVPD and WCDPS officers (including the Defendant Officers) routinely engaged in the same kind of misconduct that resulted in Plaintiff's arrest and prosecution. (*Id.* ¶ 70.) Consequently, Plaintiff claims that the City and County have been aware that their respective officers were inadequately trained and supervised and engaging in ongoing unconstitutional practices against innocent people, including Plaintiff. (*Id.* ¶ 72.) Plaintiff proffers five civil lawsuits which he claims include allegations of similar misconduct. (*Id.* ¶ 74.)

## II. Procedural Background

On March 3, 2021, Plaintiff commenced the instant action after filing a complaint. (Compl., ECF No. 1.) On May 7, 2021, the County Defendants sought leave to file their motion to dismiss, which the Court subsequently granted and issued a briefing schedule. (ECF Nos. 26 & 27.) Three days later, the City Defendants sought leave to file their partial motion to dismiss, which the Court subsequently granted and issued a briefing schedule. (ECF Nos. 28 & 29.)

On June 29, 2021, Plaintiff filed his FAC following a joint stipulation between him and Defendants. (FAC, ECF No. 35.) After a series of extensions on the briefing schedules based on Plaintiff's amendment of his claims, on November 2, 2021, the parties filed their respective briefing on the instant motions: the City Defendants filed their notice of motion (ECF No. 45), an accompanying declaration with exhibits (Acquisto Decl., ECF No. 46), memorandum in support ("City Defs.' Motion," ECF No. 47), and reply ("City Defs.' Reply," ECF No. 48); the County Defendants filed their notice of motion (ECF No. 49), an accompanying declaration with exhibits (Zeitler Decl., ECF No. 51), memorandum in support ("County Defs.' Motion," ECF No. 50), and

reply ("County Defs.' Reply," ECF No. 52); and Plaintiff filed his response in opposition ("Response in Opposition," ECF No. 53).

## LEGAL STANDARD

### I.   Federal Rule of Civil Procedure 12(b)(6)

In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Freidus v. Barclays Bank PLC,* 734 F.3d 132, 137 (2d Cir. 2013). To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action will not do"; rather, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. In applying these principles, the Court may consider facts alleged in the complaint and documents attached to it or incorporated by reference. *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152–53 (2d Cir. 2002) (internal quotation marks and citation omitted).

### II.  42 U.S.C. § 1983 Claims

Section 1983 provides, in relevant part, that: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). To state a claim under § 1983, a plaintiff must allege two essential elements:

6

"(1) that the defendants deprived him of a right 'secured by the Constitution or laws of the United States'; and (2) that they did so 'under color of state law.'" *Giordano v. City of New York*, 274 F.3d 740, 750 (2d Cir. 2001) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)).

A.    *Municipal Liability Under Monell*

"Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Social Svcs. of City of New York*, 436 U.S. 658, 691 (1978). Thus, "to prevail on a claim against a municipality under [§] 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008), *cert. denied*, 558 U.S. 933 (2009).

The fifth element reflects the notion that "a municipality may not be held liable under § 1983 solely because it employs a tortfeasor." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997); *see also Newton v. City of New York*, 566 F. Supp. 2d 256, 270 (S.D.N.Y. 2008) ("As subsequently reaffirmed and explained by the Supreme Court, municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right."). In other words, a municipality may not be liable under § 1983 "by application of the doctrine of *respondeat superior*." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986); *see also Vassallo v. Lando*, 591 F. Supp. 2d 172, 201 (E.D.N.Y. 2008) (noting that "a municipal entity may only be held liable where the entity itself commits a wrong"). Instead, there must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 122

7

(1988) ("[G]overnments should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights.").

## DISCUSSION

By his FAC, in relevant part, Plaintiff asserts *Monell* claims under federal law against the City and County, as well as claims for negligent screening, hiring and retention, negligent training and supervision, and *respondeat superior* liability under state law against the City Defendants. (*See* FAC at 35–42 (Counts VI, VIII, IX, and X).)

By their partial motion to dismiss, the City Defendants seek to dismiss Plaintiff's *Monell* claims against the City and the supplemental state law claims, with the exception of the malicious prosecution claim, against all the City Defendants for failure to state a claim. (*See* City Defs.' Mot. at 7–17.) On the other hand, by their motion to dismiss, the County Defendants seek to dismiss all of Plaintiff's § 1983 claims against them for failure to state a claim. (County Defs.' Mot. at 9–17.)

But as a preliminary matter, the Court notes that the City Defendants and Plaintiff agree that Plaintiff's supplemental state law claims for negligent screening, hiring and retention, and negligent training and supervision, must all be dismissed because the City Defendants concede that the individual City Defendants were acting under color of law and within the scope of their employment. (*See* City Defs.' Mot. at 16–17; Resp. in Opp'n at 23); *see also Schoolcraft v. City of New York*, 103 F. Supp. 3d 465, 522 (S.D.N.Y. 2015) ("Where a defendant employer admits its employees were acting within the scope of their employment, an employer may not be held liable for negligent hiring, training, and retention as a matter of law." (collecting cases) (internal quotation marks and citations omitted)).

Accordingly, the Court dismisses Plaintiff's supplemental state law claims for negligent screening, hiring and retention, and negligent training and supervision against the individual City Defendants.

Further, although the City Defendants seem to seek dismissal of Plaintiff's supplemental state law claim for *respondeat superior* liability against the City (*see* City Defs.' Mot. at 5), aside from including a single sentence seeking dismissal, they otherwise fail to provide any arguments or legal authority supporting their position. Accordingly, at this time, the Court deems the issue insufficiently briefed and denies the City Defendants' request to dismiss Plaintiff's state law claim for *respondeat superior* liability against the City. *See Alberti v. Cnty. of Nassau*, 393 F. Supp. 2d 151, 167 n. 4 (E.D.N.Y. 2005) (refusing to consider issue as insufficiently briefed); *accord Bisson v. Reppel*, 2:13-CV-245, 2014 WL 3386059, at *4 (D. Vt. July 9, 2014).

And similarly, while the County Defendants argue in a footnote that the Court must dismiss Plaintiff's § 1983 claims against the unidentified individual County Defendants for lack of personal involvement, (County Defs.' Mot. at 9 n.2.), "[i]t is well established that a court need not address an argument asserted in a footnote." *Onosamba-Ohindo v. Barr*, 483 F. Supp. 3d 159, 174 (W.D.N.Y. 2020) (citing *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, No. 12 CIV. 7372 (AT), 2020 WL 264146, at *2 (S.D.N.Y. Jan. 17, 2020) ("[C]ourts routinely decline[ ] to consider arguments mentioned only in a footnote on the grounds that those arguments are inadequately raised." (alterations in original) (internal quotation marks omitted))). Accordingly, at this time, the Court deems the issue inadequately raised and denies the County Defendants' request to dismiss Plaintiff's § 1983 claims against the unidentified individual County Defendants.

With that in mind, the Court need only analyze Defendants' remaining arguments against Plaintiff's *Monell* claims.

## I.     Plaintiff's *Monell* Claims Against the City and the County

### A.     Law

In determining municipal liability under *Monell*, courts in the Second Circuit apply a two-step test. First, a plaintiff must "prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer." *Vippolis v. Village of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985) (citation omitted), *cert. denied*, 480 U.S. 916 (1987). Normally, "a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the [municipality]." *Newton*, 566 F. Supp. 2d at 271; *see also City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985) (plurality opinion) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."); *Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002) ("A single incident by itself is generally insufficient to establish the affirmative link between the municipal policy or custom and the alleged unconstitutional violation.").

A plaintiff may satisfy the "policy or custom" requirement by alleging one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted).

After establishing the existence of a municipal policy or custom, a plaintiff must then establish a causal link between it and the alleged constitutional injury. *See Tuttle*, 471 U.S. at 824

10

n.8 ("The fact that a municipal 'policy' might lead to 'police misconduct' is hardly sufficient to satisfy *Monell*'s requirement that the particular policy be the 'moving force' behind a constitutional violation. There must at least be an affirmative link between[, for example,] the training inadequacies alleged, and the particular constitutional violation at issue." (emphasis omitted)); *Roe*, 542 F.3d at 37 (holding that "a plaintiff must demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the alleged injury" (quoting *Brown*, 520 U.S. at 404)); *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) ("Absent a showing of a causal link between an official policy or custom and the plaintiffs' injury, *Monell* prohibits a finding of liability against the [c]ity.").

       *B.*    *Application*

In their respective motions, the City Defendants and the County Defendants similarly argue that Plaintiff's *Monell* claims against the City and the County fail because he fails to sufficiently allege that each had an unconstitutional official policy or custom. (City Defs.' Mot. at 8–15; County Defs.' Mot. at 13–17.) They further argue that even if he did so, Plaintiff still fails to adequately plead how their alleged respective official policy or custom was the "moving force" behind his alleged injuries. (City Defs.' Mot. at 15–16; County Defs.' Mot. at 13–17.) After due consideration, the Court agrees with Defendants that Plaintiff fails to sufficiently allege a *Monell* claim against either the City or the County.

By his FAC, Plaintiff seems to allege three of the four categories of an official policy or custom *Monell* against both the City and County. Specifically, Plaintiff alleges that: (1) the City and the County's official government policymakers had actual knowledge of or actually committed the constitutional violations of which Plaintiff complains (FAC ¶¶ 126, 132); (2) the Defendant Officers engaged in unconstitutional conduct that amounted to a custom or usage of their respective municipality (*id.* ¶ 125); and (3) the City and the County's leaders and policymakers

caused Plaintiff's injuries by failing to train and supervise their respective employees, as well as "to promulgate proper or adequate rules, regulations, policies and procedures" (*id.* ¶¶ 128, 130). Nowhere in his FAC does Plaintiff allege any facts about either the City or the County having a "formal policy."[1] As such, the Court only analyzes Defendants' arguments on the three categories of *Monell* claims mentioned above in that order.

1.   Policymakers Had Actual Knowledge of or Actually Committed the Alleged Violations

Plaintiff first alleges that the policymakers from the City and the County had actual knowledge of or actually committed the alleged violations against Plaintiff. (*Id.* ¶¶ 126, 132). But in their respective motions, Defendants argue that Plaintiff's *Monell* theory not only fails to sufficiently identify anyone with final policymaking authority who allegedly caused Plaintiff the injuries of which he complains, but that he also fails to allege any specific actions taken by any policymaking official. (City Defs.' Mot. at 9; County Defs.' Mot. at 13–14.) The Court agrees.

Courts in this Circuit have dismissed *Monell* claims that lack explicit allegations that the officials being sued had final policymaking authority. *See, e.g.*, *Schwab v. Smalls*, 435 F. App'x 37, 40 (2d Cir. 2011) (affirming the district court's dismissal of § 1983 claim where complaint contained little more than a "vague assertion" that defendants had final policymaking authority); *Zherka v. City of New York, N.Y.*, 08 CV 9005, 2010 WL 4537072, at *4 (S.D.N.Y. Nov. 9, 2010)

---

[1] To be abundantly clear, under *Monell*, the terms "official policy" and "formal policy" are different and not interchangeable. *See Monell*, 436 U.S. at 690–91 (explaining that municipalities can be sued under § 1983 for an allegedly unconstitutional formal "policy statement, ordinance, or regulation, or decision officially adopted and promulgated" by the municipalities' officers, as well as for "constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels."); *see also Brown v. Tarrant Cnty., Texas*, 985 F.3d 489, 497 (5th Cir. 2021) ("An 'official policy' may take two forms—either a 'policy statement formally announced by an official policymaker' or a 'persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.'" (quoting *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 167 (5th Cir. 2010)).

(dismissing plaintiff's § 1983 claim for failing to plead "that any official's actions represent official policy") (internal quotations omitted), *aff'd sub nom. Zherka v. City of New York*, 459 F. App'x 10 (2d Cir. 2012) (affirming dismissal, partly on the basis that the individual official defendants were not themselves officials of the municipal defendants); *Canner v. City of Long Beach*, 12–CV–2611, 2014 WL 2862791, at *11 (E.D.N.Y. June 23, 2014) (dismissing § 1983 claim were "plaintiffs do not reference any state law supporting their claim that [the defendant] was a final policymaker"). Where similar claims have survived past the pleadings stage, the complaints contained allegations regarding officials' final policymaking authority. *See, e.g.*, *Pisano v. Mancone*, 08 CIV. 1045, 2009 WL 2337131, at *5 (S.D.N.Y. July 30, 2009) (denying motion to dismiss where the complaint alleged that a defendant acted under his authority as Police Chief and where the complaint quoted from employment termination notices suggesting that the defendant had final rulemaking authority).

Here, with respect to pleading final policy making authority, Plaintiff's FAC contains "little more than [the] vague assertion[s]" the Second Circuit deemed inadequate to trigger a municipality's liability under *Monell*. *Schwab*, 435 F. App'x at 40. The FAC contains no explicit reference to either about the individuals with final policymaking authority, the extent of their authority, or about whether one or more individuals exercised their final policymaking authority in causing Plaintiff's injuries. *See Gym Door Repairs, Inc. v. New York City Dep't of Educ.*, 12 CIV. 7387, 2014 WL 5569970, at *7 (S.D.N.Y. Nov. 3, 2014).

At any rate, as the City Defendants correctly point out, Plaintiff also failed to address Defendants' arguments on this *Monell* theory. Thus, the Court deems Plaintiff's *Monell* claims against the City and the County based on this theory abandoned, and dismisses them accordingly. *See Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 392 (S.D.N.Y. 2013).

2.    <u>Widespread Unlawful Practice that Constitutes Official Custom or Usage</u>

Plaintiff next alleges that the Defendant Officers engaged in a pattern of unconstitutional conduct that amounted to a custom or usage of their respective municipality. (FAC ¶ 125.) He specifically alleges that the City and the County each allowed a "widespread practice . . . of manufacturing false evidence, suppressing exculpatory evidence, and instigating false criminal charges." (*Id.* ¶ 127). Plaintiff further alleges that the City and the County were on notice that their respective officers routinely engaged in the type of unconstitutional misconduct alleged by Plaintiff, and merely cites "numerous complaints from civilians and police officers alike, civil rights lawsuits, notices of claim, and other information." (*Id.* ¶¶ 70, 73.) Plaintiff also lists five civil lawsuits by which he alleges that they put the City and the County on notice of a pattern of such unconstitutional conduct. (*Id.* ¶ 74.)

But Defendants argue that Plaintiff's allegations are boilerplate and too vague and conclusory to overcome dismissal. (City Defs.' Mot. at 10–11; County Defs.' Mot at 14–15.) They argue that Plaintiff fails to provide any factual basis or specificity regarding the civilian complaints, and instead provides links to news articles. (City Defs.' Mot. at 10–11; County Defs.' Mot at 15.) They also argue that the five civil lawsuits Plaintiff proffers do not support his *Monell* claim because those cases are not only factually distinguishable from the allegations here, but also fail to establish a pattern or widespread practice of similar violations to constitute an official policy or custom from either the City or the County. (City Defs.' Mot. at 11–13; County Defs.' Mot at 15–16.)

After due consideration, while the Court concludes that Plaintiff sufficiently alleges that the City (but not the County) had a widespread practice or custom of acquiescing to its MVPD officers fabricating evidence and conducting false arrests, he still fails to sufficiently allege that such "policy" was the "moving force" behind his alleged constitutional violation.

14

Under *Monell*, "an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Brown*, 520 U.S. at 404; *see also Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir. 1996) (noting that a municipality's custom "need not be memorialized in a specific rule or regulation"). Thus, *Monell* liability can apply where "a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that" it has "tacitly authorized its subordinates' unlawful actions." *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007). In other words, a plaintiff may establish municipal liability by demonstrating that a policy maker "indirectly caused the misconduct of a subordinate municipal employee by acquiescing in a longstanding practice or custom which may fairly be said to represent official policy." *Miller v. Cnty. of Nassau*, 467 F. Supp. 2d 308, 314 (E.D.N.Y. 2006). Repeated and consistent conduct often indicate city involvement or acquiescence to a deprivation of liberty. *Canton*, 489 U.S. at 395 (holding that a municipality's "policy of inaction" may rise to "the functional equivalent of a decision by the city itself to violate the constitution").

Here, Plaintiff's allegations that the City and County each allow a "widespread practice . . . of manufacturing false evidence, suppressing exculpatory evidence, and instigating false criminal charges" (FAC ¶ 127), by itself, is too vague to plausibly plead a widespread policy or custom. His allegation that "numerous complaints from civilians and police officers alike, civil rights lawsuits, notices of claim, and other information" (*id.* at ¶¶ 70, 73), also fares no better by itself.

As for the list of civil lawsuits that Plaintiff proffers, the Court also agrees with Defendants that they do not support his *Monell* claims. For one thing, three of the five cases that Plaintiff cites and for which he provides a brief summary, despite some of them naming some of the same

Defendant Officers involved here, are factually distinguishable from the facts in this case. *See, e.g.*, *Scott v. City of Mt. Vernon*, 14-CV-4441 (KMK), 2017 WL 1194490, at *1 (S.D.N.Y. Mar. 30, 2017) (alleging that in 2013, MVPD officers, among them Antonini, conducted warrantless entry and search of an apartment after reports of gunshot sounds made from inside, detained the plaintiffs without reason, and unlawfully strip searched one of them); *Nunez. City of Mount Vernon*, No. 14-CV-08530 (LMS) (Oct. 24, 2014) (alleging that in 2013, MVPD officers wrongly arrested two brothers and used excessive force against them); *Fonseca v. City Of Mount Vernon*, 0054549/2013 (Westchester Cnty., Sup. Ct., April 2, 2013) (alleging that in 2012, after plaintiff felt the need to urinate on the street but right before he was able to do so, MVPD arrested him and used excessive force against him).

Additionally, even the two cases that do "involve[] comparable conduct to that alleged here, 'none result[ed] in an adjudication of liability.'" *Tieman v. City of Newburgh*, 13-CV-4178 KMK, 2015 WL 1379652, at *17 (S.D.N.Y. Mar. 26, 2015) (quoting *Walker v. City of New York*, No. 12–CV–5902, 2014 WL 1259618, at *3 (S.D.N.Y. Mar.18, 2014)); *see also Collins v. City of New Yor*k, 923 F. Supp. 2d 462, 479 (E.D.N.Y. 2013) (holding that a "litany of other police-misconduct cases" discussed in the plaintiff's complaint "[were] insufficient to make a plausible case for *Monell* liability," because they either were different from the misconduct alleged in the complaint, post-dated the alleged misconduct in the case at hand, or "involve[d] something less (settlements without admissions of liability and unproven allegations) than evidence of misconduct"); *Strauss v. City of Chicago*, 760 F.2d 765, 768–69 (7th Cir. 1985) (holding, even pre-*Twombly* and *Iqbal*, that allegations of complaints about similar conduct were insufficient to state a claim for a widespread custom under *Monell* because "the number of complaints filed, without more, indicates nothing," as "[p]eople may file a complaint for many reasons, or for no

reason at all," and "[t]hat they filed complaints does not indicate that the policies that [the plaintiff] alleges exist do in fact exist"); *Rikas v. Babusch*, No. 13–CV–2069, 2014 WL 960788, at *3 (N.D. Ill. Mar. 12, 2014) ("[T]he fact that prior lawsuits were filed against [one of the defendants accused of excessive force] does not support [the plaintiff's] *Monell* claim nor does it evidence a widespread municipal practice."); *Xian Ming Wu v. City of New Bedford*, No. 12–CV–11648, 2013 WL 4858473, at *2 (D. Mass. Sept.11, 2013) (holding that a complaint's reference to two other similar complaints is insufficient to survive a motion to dismiss).

Further, the FAC's allegations incorporating certain news articles by references are similarly too vague and lack sufficient factual content for Plaintiff to plausibly plead that the County had a widespread practice or custom that constitutes an official policy. Specifically, the news articles Plaintiff incorporates by reference generally discuss that an undercover police officer from "the county police" helped frame civilians "on numerous occasions," and that the County DA's Office has either slowly moved forward or not at all with respect to civilian complaints and investigations against MVPD and WCPD officers. (*See generally* FAC ¶ 76 n.7 (citing George Joseph, "The Mount Vernon Police Tapes: In Secretly Recorded Phone Calls, Officers Say Innocent People Were Framed", Gothamist, June 3, 2020, https://gothamist.com/news/mount-vernon-police-tapes-innocentpeople-were-framed; *and* George Joseph, "The Mount Vernon Police Tapes: In Secretly Recorded Calls, Officer Says Some Drug Dealers Operate with 'Free Reign'", Gothamist, June 18, 2020, https://gothamist.com/news/mount-vernonpolice-tapes-officer-says-some-drug-dealers-operate-with-free-reign).)

But as for Plaintiff's allegations against the City that incorporate certain news articles by reference, the Court is of the opposite view. (*See id.* ¶¶ 76 n.7, 77.) Namely, when taking those allegations as true and drawing all inferences in his favor, the Court is of the view that insofar as

the contents of these news articles constitute allegations against the City, Plaintiff sufficiently alleges that MVPD officers have engaged in a widespread practice or custom that constitutes an official policy of the City due to its inaction, acquiescence, or tacit approval. *See Canton*, 489 U.S. at 395 (holding that a municipality's "policy of inaction" may rise to "the functional equivalent of a decision by the city itself to violate the constitution").

To be sure, "mere allegations of a municipal custom or practice of tolerating official misconduct are insufficient to demonstrate the existence of such a custom unless supported by factual details." *Triano v. Town of Harrison*, 895 F. Supp. 2d 526, 535 (S.D.N.Y. 2012). Moreover, conclusory allegations that police officers, for example, "engage in falsification to justify arrests for collateral objectives outside the ends of justice" are insufficient without proof of custom or practice." *Bleiwas v. City of New York*, 15 CIV. 10046 (ER), 2017 WL 3524679, at \*5 (S.D.N.Y. Aug. 15, 2017), *on reconsideration in part*, 15 CIV. 10046 (ER), 2018 WL 401321 (S.D.N.Y. Jan. 11, 2018).

But that is not the case here. "Courts typically require documentary evidence of a 'widespread practice.'" *Cordero v. City of New York*, 282 F. Supp. 3d 549, 563–64 (E.D.N.Y. 2017) (citations omitted); *see also Bektic–Marrero v. Goldberg*, 850 F. Supp. 2d 418, 431 (S.D.N.Y. 2012) (finding a *Monell* claim sufficiently pled where the plaintiff could point to a report by the United States Department of Justice ("DOJ") concluding that the county defendant's "provision of medical care to inmates was constitutionally deficient in several respects," and "high-ranking prison officials were advised of the DOJ's preliminary findings"). Most notably, newspaper articles, reports, and other documents may provide sufficient documentary evidence for *Monell* liability. *Cordero*, 282 F. Supp. 3d at 563 (quoting *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)).

Here, the news articles that Plaintiff incorporates by reference allege that MVPD officers have repeatedly fabricated evidence and falsely arrested individuals against whom charges were shortly dropped by the County DA's Office. These news articles focus on the tape recordings that a MVPD officer and whistleblower, Murashea Bovell, produced to the press, in which he recorded other MVPD officers who, in relevant part, admit that either themselves or their colleagues framed innocent civilians on numerous occasions. (*See* FAC ¶¶ 76 n.7, 77.) Notably, the news articles discuss several instances in which MVPD officers, including Antonini, are alleged to have fabricated evidence and falsely arrested individuals based on such evidence, some of which are sufficiently factually similar to Plaintiff's allegations here.

For example, the news articles report that in one of the recordings, MVPD officer John Campo tells Bovell that "Antonini worked with an undercover officer 'from the county police' to frame civilians after undercover drug buys 'on numerous occasions.'" (*Id.*) Campo also says that in December 2017, MVPD officers had purposely planted crack cocaine in a flower bed in front of a restaurant to arrest an individual they had been trying to arrest for months. (*Id.*) Indeed, the alleged arrestee himself, Johnathan Long, provides a corroborating account of what allegedly went through and states that the charges were dropped shortly after he was arrested. (*Id.*)  The news articles also discuss a call recorded in February 2018, in which Campo claimed to have provided a three-page memo to two different commissioners that outlined numerous acts of misconduct he had witnessed, including "planting drugs . . . and fabricated search warrants." (*Id.*)

The news articles further discuss how in February 2019, Bovell mailed the County DA's Office a recorded call with Avion Lee, another MVPD officer, who claimed that her supervisor had instructed subordinates to make up drug allegations against an individual to justify an incident of police brutality. (*Id.*) The news articles state that the MVPD officers took the man to jail and

concocted a story that they had seen the individual conduct a "hand-to-hand" drug transaction, but that they were unable to find any drugs in the area after the arrest. (*Id.*) The news articles report that the individual only spent a day in jail after prosecutors dropped the case immediately. (*Id.*)

And finally, the news articles also discuss Plaintiff's own allegations in his FAC about how the Defendant Officers falsely arrested him in July 2019 based on fabricated evidence and that the charges against him were dropped months afterwards. (*Id.*) "Given those allegations, the Court cannot simply disregard the allegations about prior incidents" involving similar facts: incidents in which MVPD officers framed individuals with fabricated evidence and that resulted in prosecutors dismissing the charges against these individuals shortly afterwards. *See Colon v. City of Rochester*, 419 F. Supp. 3d 586, 606 (W.D.N.Y. 2019).

And while the City Defendants argue that the Court should disregard these news articles because they are uncorroborated and unsubstantiated (*see* City Defs.' Mot at 10; City Defs.' Reply at 9), the City Defendants overlook that at this stage of the litigation, "[t]he fact that a pleading contains references to documents that may eventually be ruled inadmissible in evidence is not a proper basis for dismissal pursuant to Rule 12(b)(6)." *Ricciuti*, 941 F.2d at 123–24. That is because "[w]hether or not the cited reports and incidents would eventually be admissible in evidence, the [FAC] allege[s] circumstances that preclude[s] any conclusion that it was 'beyond doubt' that [P]laintiff[] would be unable to prove any set of facts in support of [his] [*Monell*] claims" against the City. *Id.* at 124.

But for all that said, Plaintiff still fails to sufficiently allege that such "policy" was the "moving force" behind his alleged constitutional violation. For municipal liability to attach, a plaintiff's injuries must have "occurred as the result of a municipal policy rather than as a result of isolated misconduct by a single actor." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 130

(2d Cir. 2004). Here, Plaintiff alleges in relevant part that "the City . . . is liable for the violation of Plaintiff's constitutional rights because Plaintiff's injuries were caused by the policies, practices, and customs of the City . . . as well as by the actions of policy-making officials for the City." (FAC ¶ 126.)

But these boilerplate allegations of causation are insufficient to overcome a motion to dismiss. *See Pettiford v. City of Yonkers*, 14 CIV. 6271 (JCM), 2021 WL 2556172, at *10 (S.D.N.Y. June 21, 2021); *see also Tieman*, 2015 WL 1379652, at *14 (declining to accept as true conclusory accusations unsupported by facts that would permit the court to infer that city policies caused the alleged constitutional violation). Even when drawing all inferences in his favor, as the City Defendants point out, nowhere does Plaintiff plead any facts about which City policymakers were on notice, how they received notice, and how exactly the City "tacitly approved" of such policy despite having notice of the same. As the Second Circuit has previously noted, a plaintiff's allegations on causation must be premised on more than "on . . . the mere fact that the misconduct occurred in the first place." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 130 (2d Cir. 2004); *accord Pettiford*, 2021 WL 2556172, at *10.

Accordingly, the Court dismisses Plaintiff's *Monell* claims against the City and the County based on the theory of a widespread unlawful practice that constitutes an official policy of the municipality.

3.   <u>Failure to Promulgate Proper or Adequate Rules, Regulations, Policies, and Procedures.</u>

Plaintiff next alleges that the City and the County each failed to promulgate adequate policies and procedures, and that they fail to train and supervise their respective officers. Specifically, Plaintiff lists a number of areas in which they allegedly failed to implement proper policies, namely: "the searching of detainees and arrestees, the collection, documentation,

preservation, testing, and disclosure of evidence; the writing of police reports and taking of investigative notes; obtaining statements and testimony from witnesses; and maintenance of investigative files and disclosure of those files in criminal proceedings." (FAC ¶ 130).

To support a claim based on such type of inaction, a plaintiff must show that the municipality's failure to [implement adequate policies and procedures] is so severe as to constitute "deliberate indifference" to a plaintiff's rights. *See Canton*, 489 U.S. at 388–89. The phrase "deliberate indifference" means more than "simple or even heightened negligence"; it involves a "conscious disregard" on the part of municipal employers for the consequences of their actions. *Brown*, 520 U.S. at 407.

Deliberate indifference is a stringent standard. *Connick v. Thompson*, 563 U.S. 51, 62 (2011). To establish a claim based on such theory,

> a plaintiff must properly plead (1) that a policymaker knows to a moral certainty that her employees will confront a given situation; (2) that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation; and (3) that the wrong choice by the . . . employee will frequently cause the deprivation of a citizen's constitutional rights.

*Hawthorne by Hawthorne v. County of Putnam*, 492 F. Supp. 3d 281, 292 (S.D.N.Y. 2020) (quoting *Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 440 (2d Cir. 2009) (internal quotations omitted)). In other words, the plaintiff must show that the need for more or better protocols or supervision to protect against constitutional violations was obvious, such that it amounts to a deliberate choice by the municipality. *See, e.g.*, *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995). "An obvious need may be demonstrated through proof of repeated complaints of civil rights violations; deliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents." *Id.*

22

Here, as noted above regarding his previous *Monell* theory, while Plaintiff plausibly alleges "a history of employees mishandling the situation" (at least with respect to the City, but not the County), the FAC once again contains insufficient boilerplate allegations. For example, the FAC broadly alleges that the City and the County failed to "adequately train and supervise MVPD and WCDPS employees on their obligations not to falsify and plant or fabricate evidence, falsify official documents, and falsely arrest, or maliciously prosecute individuals." (FAC at ¶ 85.) But nowhere does Plaintiff identify which policymakers from either municipal organization knew "to a moral certainty" about the alleged "history of employees mishandling the situation" and was deliberately indifferent to it such that their respective officers would "frequently cause the deprivation of a citizen's constitutional rights." Nor does Plaintiff sufficiently allege a specific deficiency in either the City or the County's training for his failure-to-train theory. *See, e.g.*, *Simms v. City of New York*, No. 10–CV–3420 (NGG)(RML), 2011 WL 4543051, at *2 (E.D.N.Y. Sept. 28, 2011) ("[T]o survive a motion to dismiss, the complaint must plainly identify the type of training the government employees lacked and include 'enough factual material . . . for the court to reasonably infer that the police misconduct' was not the result of 'the individual acts of the arresting officers.'"), *aff'd*, 480 F. App'x 627 (2d Cir. 2012).

Accordingly, the Court dismisses Plaintiff's *Monell* claims against the City and the County on the theory of failure to implement adequate policies and procedures, and failure to train and to supervise. In sum, considering all of the above, the Court dismisses all of Plaintiff's *Monell* claims against the City and County.

## II.   Leave to Amend

Lastly, the Court addresses Plaintiff's request for leave to amend the claims dismissed by this Opinion. (Resp. in Opp'n at 24.)

Leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). "[I]t is within the sound discretion of the district court to grant or deny leave to amend." *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018) (internal quotation marks omitted). "Leave to amend, though liberally granted, may properly be denied" for "'repeated failure to cure deficiencies by amendments previously allowed'" or "'futility of amendment,'" among other reasons. *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Here, while Plaintiff has already amended once, he claims to be in possession of facts that could potentially cure the deficiencies that Defendants highlighted in their instant motions and that the Court highlighted in this opinion. *See, e.g., TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if plaintiff fails to specify how amendment would cure the pleading deficiencies in the complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result). Specifically, he claims that he can more fully incorporate allegations from relevant news articles and from reports indicating that the County DA's Office has called for DOJ to investigate the MVPD "for pervasive and persistent alleged civil rights violations including unlawful strip searches, excessive use of force, and other misconduct." (Resp. in Opp'n at 13 n.1 & 2.) Accordingly, the Court grants him leave to file a Second Amended Complaint to replead the claims that the Court dismissed above.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART the City Defendants' partial motion to dismiss (ECF No. 45) and the County Defendants' motion to dismiss (ECF No. 49). Specifically, the Court GRANTS the motions as to all of Plaintiff's *Monell* claims against both the City of Mount Vernon and the County of Westchester, and as to Plaintiff's supplemental state law claims for negligent screening, hiring and retention, and negligent training and supervision, against the City of Mount Vernon. The Court DISMISSES such claims without prejudice. The Court DENIES the motions in all other respects.

The Court moreover GRANTS Plaintiff leave to file a Second Amended Complaint to replead those claims that were dismissed without prejudice. If Plaintiff chooses to do so, he shall have until October 24, 2022, to file a Second Amended Complaint. Defendants are then directed to answer or otherwise respond by November 21, 2022. If Plaintiff fails to file a Second Amended Complaint within the time allowed, and he cannot show good cause to excuse such failure, any claims dismissed without prejudice by this Opinion and Order may be deemed dismissed with prejudice.

The Clerk of Court is directed to terminate the motions at ECF Nos. 45 and 49.

Dated:  September 22, 2022
      White Plains, NY

SO ORDERED:

NELSON S. ROMÁN
United States District Judge